EMMA D. LARSEN, Administratrix, Appellant, v. INDEPENDENT SCHOOL DISTRICT of Kane Township, Appellee.

No. 43821.

APRIL 6, 1937.

REHEARING DENIED OCTOBER 1, 1937.

Robertson & Robertson, for appellant.

Mitchell & Johnson, for appellee.

692

PARSONS, J.—Plaintiff in this case is the administratrix of the estate of Arthur Grant Larsen, deceased, who met with an accident on the 11th of November, 1935, which resulted in his death within a few days thereafter, and in the petition plaintiff claims judgment against the defendant in the sum of $30,000, for such death, the petition being in two counts.

The first count is based solely upon negligence, and the second count makes the same allegations as in the first count, except that it alleges defendant was maintaining a nuisance, and in count 2 cites and refers to section 12395 of the Code, as to what constitutes a nuisance.

The facts set forth in the petition are about these: That there was to be a celebration of Armistice Day and exercises were to be held in the various schools on November 11, 1935, and the deceased, who was a member of the American Legion of Council Bluffs, Iowa, had been selected by the defendant and the Post at Council Bluffs to make an address to the school children at Washington Avenue school building. Prior to that time the school district had prepared a platform in the north end of the hall on the third floor in said school building, with three small removable steps at the side of the platform where Mr. Larsen was to stand while making his address. The platform was made of lumber, about twelve feet long east and west, and four or five feet wide north and south, and about 22½ inches high from the floor. The platform extended back to a railing at the north end, which railing projected about two feet above the platform. Above this a curtain hung from the ceiling where it was fastened on rollers, but it was not fastened to the railing. Back of the railing and curtain there was an open space or stair well to the floor below.

The speaker was a man about 42 years of age, with an artificial leg, having lost one leg in the World War. As he mounted the platform, he stepped back, lost his balance and as he clutched for the curtain it tore away from its moorings and Larsen plunged over the railing and fell to the floor below, sustaining injuries from which he died in a few days.

The petition alleged the deceased was an invitee of the program committee, was a married man with two children, was city auditor of Council Bluffs at the time, earning $195 per month. It is alleged further that the defendants, its officers, and employees were guilty of certain acts and conduct consisting of

omissions and commissions of negligence, which negligence was the direct and proximate cause of the injuries to decedent, which resulted in his death.

These acts of negligence alleged were, First, that the hall was a dark place where the platform was constructed; that the curtain should not have been left loose and unfastened as it was; that the defendant should have had an iron or steel netting of permanent background for the platform; that when Arthur Grant Larsen lost his balance and fell backward there was nothing to protect him, to keep him from: falling down the stair well; that Larsen had no notice of the dangerous condition, and while this dangerous condition existed he was invited to make such address. There were further allegations about the curtain not being fastened, or not of a permanent nature, creating a dangerous situation, and allegations, of: course, as to the necessary medical treatment, expenses, and the death of Larsen on the 19th day of November, 1935, as a result of the accident.

Count 2 of the petition copies verbatim practically the first eight paragraphs of the first count, and then alleges that on the 11th day of November, 1935, the following statute was in force in the State of Iowa:

"Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof."

So the first count is based upon ordinary negligence, and the second count is based solely upon maintaining a nuisance by the school district.

The answer of the defendant denied each and every allegation therein contained, except such as were specifically admitted. It admitted that it is a school corporation organized, created and existing under and by virtue of the statutes of the State of Iowa, and that at the times referred to in plaintiff's petition it owned, maintained and operated in Council Bluffs, Iowa, a building known as "Washington Avenue School" where the accident happened. The case was tried to a court and jury; and evidence was introduced and showed about the state of facts as set forth in plaintiff's petition. And further, that the

platform was a temporary affair, and the steps were also temporary.

The evidence of J. A. True was that he was superintendent of schools of the defendant, and had been for six years; that he had his office in the Washington Avenue school building, and spent most of his time there; that he was familiar with the third floor of said building; that during the time he was superintendent they would hold exercises on said third floor of said school building; that it was the only place they had to hold an assembly of students; that whenever it was necessary to call the students together they had them in that upper hall; that they had to have chairs for meetings of long duration, but for this particular meeting it was thought the pupils would stand, as it was to be a short address. Miss Ivory was principal of this school, but at the time of the trial she was away attending the funeral of her sister. Mr. True testified that there were two stairways leading to the third floor of the school building, one at the north, and the other at the south end; that on the 11th of November, 1935, a platform or stage was at the back part of the hall, near the banister; the platform being about 20 feet east and west, and 4 or 5 feet north and south; that there were two steps to the south of the platform, and the platform made the third step. That just back of the platform there was a banister, or railing, of solid wood, kind of oak color, which went down to the floor in the hall and projected about three feet above the top of the platform; and above the railing was a curtain suspended from rollers fastened to the ceiling, but the curtain was not fastened at the bottom to the railing. Back of the curtain was the stair well down to the next floor. The witness stated he was not on the third floor when the accident happened; that he knew the meeting was to be held that day, having learned this from the principal of the building; but he did not recall any specific time that it was talked over, but he thought it was spoken of at an informal meeting of the board, but he did not recall any comment or discussion of the matter. Mr. True said the American Legion asked them to cooperate with them in observing Armistice Day, and the schools arranged a place for the meeting, and the Legion provided the speakers. Mr. True testified that the curtain that hung at the back of the platform shut out the light and it was necessary to have on the lights.

Fred B. Shaw testified that he was a member of the school board of defendant, and had been for about nine years. He testified that it was the custom for Mr. True to mention that exercises would be held on certain dates, just a mention of the fact, that they were to observe Armistice Day in the schools; that sometimes the whole school board was present, sometimes not; they would talk about it maybe; Mr. True was superintendent of the schools. He said he thought the principals went ahead and arranged for the program.

The custodian of the building also testified that he was on the third floor of the building when the accident happened, but did not see Larsen fall; that the banister just north of the platform is 22 inches above the top floor of the platform; that the bottom of the curtain hung close to the top of the banister; that he knew there were to be exercises. He said he heard a noise and when he got there he saw Larsen lying on his back on the second floor.

There can be no question from the record of the case that Larsen came to his death substantially as claimed in the petition; by falling over the banister at the back of the stage. The burial bill, physicians and hospital bills, and nurse hire were admitted by the defendant to be $678. The amount that the plaintiff is entitled to recover, if any, on account of said bills was left for the court to say and determine as a matter of law.

At the close of plaintiff's testimony the defendant filed a motion to direct a verdict on the following grounds: First, that the evidence offered by plaintiff was insufficient as a matter of law to sustain a finding by the jury of negligence on the part of defendant as charged in her petition; second, that the evidence failed to show Larsen free from contributory negligence; third, that count 1 of plaintiff's petition was based on negligence, and that the sole and only ground upon which plaintiff seeks to recover, in count 1, is based upon the allegation, "that said defendant and its officers and employees were guilty of the following acts and conduct, consisting of omissions and commissions of negligence, which negligence was the direct and proximate cause of the said Larsen receiving said injuries which resulted in his death", and defendant alleged in its motion that it was established by the undisputed evidence in the case that in the operation and maintenance of said Washington Avenue school, and the place where plaintiff's intestate received the

injuries which resulted in his death, that the defendant school district was acting in a purely governmental capacity, and when acting in such capacity it is not liable in damages resulting from the negligence of its officers, servants, employees, and agents; fourth, that the allegations of count 1 of plaintiff's petition did not state a cause of action against the defendant; fifth, that the evidence offered by plaintiff was not sufficient to support a verdict against defendant upon said count 1, and should the court submit the case to a jury and it return a verdict against defendant, it would be the duty of the court to set aside the verdict upon the ground of the insufficiency of the evidence to support same; and sixth, that upon the whole record as made by the plaintiff, to allow a verdict to stand against the defendant, in favor of plaintiff, would be error.

The defendant also moved to direct a verdict on count 2, and followed about the same grounds as in its motion on count 1, setting forth also that as a matter of law, the condition or the place maintained by the defendant, which is alleged to constitute a nuisance resulting in the injuries and death of decedent, did not constitute a nuisance within the meaning of section 12395 of the Code, or within the common law definition of nuisance. Then followed, that if upon the theory such condition could be said to constitute a nuisance, then under the allegations of count 2 of plaintiff's petition, and under the undisputed record, the said condition could only have become a nuisance because of the alleged failure of the defendant, its officers, employees, servants and agents to maintain the same in a safe condition; that said negligence necessarily and obviously, if any there was, arose in the exercise of a governmental function by the defendant, and the defendant would not be liable to the plaintiff for injury or damage sustained by plaintiff's intestate arising because of a nuisance caused or created by the negligence of the defendant, its agents, officers, servants and employees; second, that the allegations of count 2 do not state a cause of action against the defendant; third, that the evidence offered by plaintiff in support of count 2 of her petition is insufficient to support a verdict against the defendant, and should the court submit this case to the jury and it should return a verdict in favor of plaintiff, it would be the duty of the court to set the verdict aside; fourth, that upon the whole record, as made by the plaintiff, to allow a verdict against the defendant

and in favor of the plaintiff to stand upon count 2 of plaintiff's petition would be error.

In ruling upon said question the court said:

"As to count one, I question very much, and believe none of us think that count one should be submitted to the jury. It seems to me that the law relative to immunity in a governmental capacity of a school district is that there can be no liability for negligence.

"That brings us down to the only question left, and that is whether or not the allegations of count two of plaintiff's petition should be submitted to the jury. It seems to me, and I cannot get away from the thought, that the question is absolutely determined in the case of Smith v. Iowa City in 213 Iowa 391, 239 N. W. 29. I am unable to apply the facts, the undisputed facts in the case to the law laid down in the Smith case, and reach any other conclusion but that the finding of the Supreme Court of Iowa in that case decisively determines this question.

"For the above reasons it is my opinion that the motion will have to be sustained, and the same is hereby sustained. All parties adversely affected are given an exception."

From this ruling plaintiff has appealed to this court.

This court, in Kincaid v. Hardin County, 53 Iowa 430, 431, 5 N. W. 589, 590, 36 Am. Rep. 236, decided in April, 1880, that a county cannot be held liable in damages for a personal injury sustained by reason of the defective construction of its court-house, and the negligence of the county in failing to keep it properly lighted at night. In that case it was said:

"'A plainly marked distinction is made, and should be observed, between municipal corporations, as incorporated villages, towns and cities, and those other organizations, such as * * * counties, school districts and the like, which are established without any express charter or act of incorporation, and clothed with but limited powers. These latter political divisions are called *quasi* corporations, and the general rule of law is now well settled that no action can be maintained against corporations of this class by a private person, for their neglect of public duty, unless such right of action is expressly given by statute.'"

It says further, on page 433: "The ground upon which it is held that *quasi* corporations, such as counties, towns, school

districts and the like, are not liable for damages in actions of this character is that they are involuntary territorial and political divisions of the State, created for governmental purposes, and that they give no assent to their creation, whereas municipal corporations proper are either specially chartered, or voluntarily organized under general acts of the legislature."

The court then calls attention that in Wilson & Gustin v. Jefferson County, 13 Iowa 181, this court years ago held that a county was liable for an injury to a person caused by a defective county bridge, and says:

"That case has been followed in a number of other cases down to the present time, although exhaustive arguments have been made insisting that it should be overruled, as against not only the weight but the whole current of authority. As often as the question has been made, the rule has been adhered to without deviation. In Huston v. Iowa County, 43 Iowa 456, it is said: 'We have no inclination now to review, either for the purpose of fortifying or overturning, a case (referring to Wilson & Gustin v. Jefferson County) which has for so long a time, in so many instances, and in so deliberate a manner, been sanctioned and followed.' "

The opinion in the Hardin County case further says:

"But as the line of decisions in this State as to the liability for defective bridges stand almost if not quite alone, as we have seen, we have no disposition to carry the doctrine further than is necessary to sustain the decisions of the court, which have stood so long that it may truthfully be said they have the implied sanction of the law-making power and the people of the State," citing Krause v. Davis County, 44 Iowa 141. The opinion then points out a distinction, and says: "An examination of the cases where it is held that quasi corporations are not liable in actions of this character will disclose that the reason of the rule is, as before observed, that they are involuntary political divisions of the State created for governmental purposes", and points out that all counties are required, without their assent and exclusively for public purposes, to provide a room or place for holding the courts; counties have no option concerning this duty; it is an involuntary duty imposed upon them by the State, and imposed upon all alike; that the obliga-

tion to build bridges is different, the statute leaves it to the respective counties to determine what bridges shall be built. This Hardin County case from which we have quoted caused considerable discussion in legal circles at the time.

Lane v. Dist. Township of Woodbury, 58 Iowa 462, 12 N. W. 478, holds that a school district is not liable for personal injuries sustained on account of the negligent construction of its schoolhouse, or negligence in failing to keep it in repair, citing the Hardin County case as controlling.

In Green v. Harrison County, 61 Iowa 311, 16 N. W. 136, it was held that under the rule announced in Kincaid v. Hardin County, 53 Iowa 430, 5 N. W. 589, 36 Am. Rep. 236, a county is not liable for damages caused by the overflow of a ditch constructed under its direction, and which has become obstructed by sediment. And to the same effect is Nutt v. Mills County, 61 Iowa 754, 16 N. W. 536.

In Lindley v. Polk County, 84 Iowa 308, 50 N. W. 975, it was held that a county is not liable for injuries sustained to the health of a prisoner while confined in the county jail by reason of its unfit condition as a place for the confinement of prisoners. Likewise, in Dashner v. Mills County, 88 Iowa 401, 55 N. W. 468, it was held that in an action to recover damages for the negligent construction or failure to keep open a ditch constructed under section 1207 of the Code, a county is not liable, for the reasons stated in the Hardin, Mills and Harrison County cases.

In Wilson v. Wapello County, 129 Iowa 77, 105 N. W. 363, 6 Ann. Cas. 958, it was held in an action for injuries alleged to have resulted from a defective county bridge, or approach thereto, that an instruction that in case the accident occurred before the team entered upon the approach to the bridge the plaintiff could not recover, was correct, since a county is not charged with the duty of keeping ordinary highways in repair and is not liable for injuries resulting from defects therein.

In Wenck v. Carroll County, 140 Iowa 558, 118 N. W. 900, it was held a county is not liable in damages for the unlawful act of its supervisors in extending a drainage ditch beyond the boundary of the district to the injury of land outside; the remedy, if any, is against the persons guilty of the trespass.

In Snethen v. Harrison County, 172 Iowa 81, 85, 152 N. W.

12, 13, the court held that for more than a half century this court has persistently and consistently refused to declare a county liable for negligence in the performance of its governmental functions, with the single exception of negligence in the construction and maintenance of bridges and approaches thereto, and that therefore, inasmuch as a county, being an involuntary territorial and political division of the state for governmental purposes, is not liable in damages for performing its governmental acts in a negligent manner, it necessarily follows that the officers and employees of the county who perform such acts in a negligent manner are not liable. The court in commenting on the difference between involuntary and voluntary territorial or political divisions of the State, says:

" 'Counties are involuntary political or civil divisions of state, created by general statutes, to aid in the administration of the government. * * * They are simply governmental auxiliaries, created bodies corporate ''for civil and political purposes only.'' * * * To the statute they owe their creation, and the statute confers upon them all the powers which they possess, prescribes all the duties which they owe, and imposes all the liabilities to which they are subject. To enable them the better to exercise their powers and discharge their duties, our statute clothes them with corporate capacity. Considered with respect to their powers, duties and liabilities, they stand low down in the scale or grade of corporate existences. It is for this reason they are ranked among what have been styled quasi corporations. * * * On the other hand, the decisions are almost (though not wholly) uniform to the effect that counties and other quasi corporations are not liable to private actions for the neglect of their officers in respect to highways, unless the statute has in so many words created the liability, specially giving the action to the party injured. * * * *If the county ought to be held liable in such a case, the remedy must be sought from the legislature.'* "

Post v. Davis County, 196 Iowa 183, 191 N. W. 129, 194 N. W. 245, follows the reasoning of these cases, and quotes approvingly from the Hardin County case, and the other cases commented on.

So we think from the decisions of the courts of Iowa, that there is a line of distinction between incorporated cities and towns and such corporations as counties, and school districts,

the latter being what are known as quasi corporations, and only for governmental purposes. A school district is an organization simply for the purpose of carrying on the schools, for that and nothing else. It is only a quasi corporation, and in the face of these decisions it seems to us it would be very disregardful of the law for the court to hold that in a case of this character here that the school district is liable.

Lane v. Dist. Township of Woodbury, 58 Iowa 462, 12 N. W. 478, says:

"A school district is a public corporation, or quasi corporation, created by statute for the purpose of executing the general laws and policy of the state, which require the education of all its youth. It is a branch of the state government, an instrument for the administration of the laws, and is, so far as the people are concerned, an involuntary organization."

The court in passing upon the question when presented to him for a directed verdict, recognized this and called attention to the case of Smith v. Iowa City, 213 Iowa 391, 239 N. W. 29.

In the Iowa City case there was an action against the city, a municipal corporation of the first class, not a quasi corporation, where it was held, that a city in exercising its governmental power through a park board to acquire and maintain public parks, is not liable to damages consequent on the negligent failure to keep the instrumentalities in said parks in repair; nor are the members of the park board individually liable for such nonfeasance on their part.

We have examined in addition to these cases valuable notes from the 21 A. L. R. 1328, 24 A. L. R. 1070, 56 A. L. R. 164, and 66 A. L. R. 1282. These notes fully sustain the rule that school districts are quasi corporations, and that as such they are not liable in actions of this character.

The plaintiff claims something under section 12395 of the Code as to nuisances. This section has been in the Code of Iowa for a great many years, and substantially covers everything covered in the first Code. In the Hardin case there was a nuisance.

So, after considering all these cases, and the principles laid down therein, and having examined all the authorities cited, besides many others, we arrive at the conclusion that the lower court did not err in sustaining the motion for a directed verdict.

True, there was no direct plea of the school district acting in a governmental capacity, but the evidence and the record showed this completely, and the motion to instruct the verdict, by its very terms, raised this question where it stood after trial was had and the record considered, and the court said:

"Upon the whole record, as made by the plaintiff, to allow a verdict against the defendant and in favor of the plaintiff to stand upon count two of plaintiff's petition would be error."

The record fully shows it was admitted therein the defendant was a school corporation for public purposes. That is the defendant the plaintiff sued; alleged it in its petition. Hence, having alleged that, plaintiff undertakes to make proof under it; fails to show the object of the suit, the liability of the defendant. For the reasons pointed out the judgment of the lower court is hereby affirmed.—Affirmed.

RICHARDS, C. J., and HAMILTON, DONEGAN, KINTZINGER, SAGER, ANDERSON, and MITCHELL, JJ., concur.