VERLE L. PERKINS, appellant, v. PALO ALTO COUNTY and BOARD OF SUPERVISORS, appellees.

No. 48301.

(Reported in 60 N.W.2d 562)

October 20, 1953.

312

Dwight G. McCarty, of Emmetsburg, for appellant.

Leslie A. Prichard, of Emmetsburg, for appellees.

Mulroney, J.—Plaintiff owns eighty acres in Section 17 in West Bend Township in Palo Alto County, which is bounded on the west and south by county roads. In April 1951 he filed his petition in equity against the defendant County, the Board of Supervisors, and the individual members thereof, alleging that defendants graded the road along the south side of his land (sometimes called the West Bend Road) across a natural, north to south, watercourse without putting a culvert through such grade, and without putting in an adequate ditch to take the water, thus backing up the water and flooding his land. The petition also alleged two gate-fill approaches to plaintiff's land, one in Section 17, and one in Section 16 to the east had been removed by the road improvement and not put back. The prayer was for a mandatory injunction requiring defendants to put a culvert through the road to the south of his eighty in the natural watercourse; the installation of the gate-fill approaches to his land in Sections 16 and 17; the abatement of the nuisance of the flooding of his land; and actual damages in the sum of $5400 and $1000 exemplary damages against one member of the board of supervisors. The petition also alleged plaintiff owned another eighty acres in Section 20 in the same township where a gate-fill approach from the county road was necessary and it sought to require defendants to install it.

Upon motion of defendants the court struck all allegations

material to plaintiff's claim for damages, and defendants then answered, tendering the two gate-fill approaches to plaintiff's land in Sections 16 and 17, denying the necessity of the third in Section 20, and denying other allegations in the petition, specifically pleading, however, that the roadside ditch adjacent to the west and south sides of plaintiff's eighty in Section 17 was the watercourse to carry the water east to the Des Moines River; that this watercourse had been in existence since 1917 when it was constructed at the request of, and with the acquiescence and consent of, the then owner of plaintiff's land, and that plaintiff had knowledge of the continuous existence of said watercourse and by virtue of its continuous existence since 1917 it had become a natural watercourse.

The trial court found that prior to 1917 a natural watercourse entered plaintiff's land on the northwest side, flowing generally in a southeasterly direction across the land and under a bridge in the West Bend Road and on south to a lake. The court went on to find that in 1917 the highway along the west and south sides of plaintiff's land was regraded and the bridge on the south road was removed and the roadside ditches constructed to carry the water around the edge of the eighty instead of across it, which diverted the water from the natural watercourse, and carried it on east to the Des Moines River. The court found the artificial watercourse was constructed at the request of Lafe Hinton, the then owner of plaintiff's eighty (which plaintiff purchased from Hinton in 1934) and that plaintiff who had always lived in the area had personal knowledge of the new watercourse before and after it was constructed. The court held the roadside ditch watercourse was now the natural watercourse and plaintiff was not entitled to have a culvert constructed under the south road to carry the water in the old watercourse south to the lake. The court also found there was no showing of the necessity for the gate fill in Section 20, but decreed the county should replace the gate fills leading to plaintiff's property in Sections 16 and 17, and assessed court costs, two thirds to plaintiff and one third to defendants. Plaintiff appeals, and the first proposition he relies upon for reversal is that the court erred in denying the gate fill in Section 20.

I. Plaintiff's eighty acres in Section 20 is referred to in the evidence as the south eighty and his eighty acres in Section 17 is referred to as the north eighty. His home and farm buildings are located on the south eighty, approximately forty rods west of the northeast corner of the eighty. The north eighty is mostly used for pasture. Plaintiff testified that there had always been a gate at the northeast corner of the south eighty opening onto the road that leads north to the north eighty, which was used for entrance from the highway for stock as the ditch was not deep, but when this road was graded and the ditch deepened the entrance could not be used and the stock had to be driven forty rods west of the corner on the highway to the farm buildings. It does not clearly appear in the evidence when this road was graded but there is some indication it was in the fall of 1950. Plaintiff testified that in his farming operations he had to drive his stock on the road a good deal between the home and pasture eighties—sometimes as much as each night and morning when he had sheep and there was danger from dogs if the sheep were left in the pasture at night. He said the road west from this gate was up a steep hill and there was danger from cars which would be eliminated if there was a gate fill across the deep ditch to the corner gate.

There seems to be no question but that the deepened ditch in 1950 successfully blocked an existing stock entrance to plaintiff's land at the corner gate. Section 308A.16, Code, 1950, provides that officers in charge of highway improvements shall not "destroy or injure reasonable ingress or egress to any property." The trial court held plaintiff's showing as to the necessity of the gate fill at this corner gate was nothing more than a showing of convenience to him, and denied relief. The real question is whether the highway improvement destroyed reasonable ingress and egress at this corner gate. We think the evidence shows it did. It is true the corner gate is not far from the entrance to the farm buildings but that entrance is on another road and up a hill and in any event it certainly destroyed a highway entrance that had existed, and under the record was much used, for many years prior to its destruction by the road improvement. What would be "reasonable ingress and egress"

to the property from the highway would not be capable of precise definition, but as good a test as any would certainly be one that existed and was used in normal farm operations for many years prior to the improvement. We hold plaintiff entitled to the relief asked with respect to the gate-fill approach from the highway to his land in Section 20.

II. Plaintiff's second proposition is that the court erred in holding that the ditch along the west and south sides of his north eighty had by use and acquiescence become the natural watercourse. The record fully supports this finding by the trial court. Lafe Hinton testified that he requested the roadside ditch watercourse in 1917 and the County put it in. There is no need to review the other evidence for plaintiff admitted the roadside ditch waterway to the Des Moines River had been carrying the water since 1917. He said: "At that time when I bought the land the water ran around the corner around the west side of the box culvert near the northwest corner of my north eighty instead of across my land. It had run around there since '17, maybe before, anyway since that time."

The trial court was right in holding the roadside ditch watercourse was now the natural watercourse. Nixon v. Welch, 238 Iowa 34, 24 N.W.2d 476, 169 A. L. R. 1141. Plaintiff was not entitled to the relief demanded by the construction of a culvert through the West Bend Road.

III. There is another error asserted in plaintiff's proposition 2, which we think brings us to the heart of this controversy with respect to the north eighty and the watercourse. The plaintiff asserts the trial court erred in holding the roadside ditch watercourse "amply carried the water." There was evidence of the flooding of plaintiff's land from the ditch to the south for the years 1946 to 1950. This would not entitle plaintiff to the relief of a culvert to put the water back in the old watercourse, but, upon proper showing, it would entitle plaintiff to the relief of compelling proper maintenance of the roadside ditch to prevent such flooding. Plaintiff's whole case for injunctive relief is contained in this short excerpt from his testimony: "As long as that ditch was kept open along the

north side of the West Bend Road down to the river I don't have any water on my land. It takes care of it."

The County had the duty to see that this roadside ditch was kept open. Defendants make some argument that plaintiff had this duty to do the work "and he would be paid for it", based upon Lafe Hinton's having done the work when he owned the eighty. Hinton was paid by the County for his work on the ditch and the County does not seriously argue the duty to maintain and keep open the roadside ditch was not its obligation.

IV. This does not mean the trial court was in error in his holding that the ditch was now ample to carry the water. In his findings the trial court stated: "In 1950 the grade was again rebuilt, the ditch cleaned out by the county, resulting in relief from any overflow on his [plaintiff's] land during the crop season of 1951." The trial court is supported by this testimony of plaintiff, testifying in September 1951: "My land has not been flooded this year, I have got as good a crop as I ever had, I would say almost a perfect crop of soybeans, in fact better than they have two or three miles from there and the corn to the east channel is almost a perfect crop. That is different from '46, '47, '48 and '49, because the road was regraded in '50 and the water drained to the river on the north side. In '51 the river was high, very high. In fact it was eighteen inches from the bridge at one time for two or three days and still I didn't have any water on my land."

We hold this record supports the trial court's finding and the court's denial of injunctive relief with respect to cleaning out the roadside ditch to the Des Moines River.

V. Much of plaintiff's brief is devoted to the argument that plaintiff is entitled to a money judgment for damages and error is predicated upon the trial court's ruling striking the damage allegations from his petition. At the time of this ruling the trial court stated: "In ruling on this motion it is the purpose and intention of the Court to strike from the Amended Petition all allegations material to plaintiff's claim for damages, it being the opinion of the Court that the County is a quasi corporation and not liable for the damages claimed; that no

liability attaches to the County except as fixed by statute and under the Iowa law the County would not be liable for damages as claimed in plaintiff's Amended Petition. As to the individual defendants they were each and all members of the Board of Supervisors and neither the County nor individual members of the Board are liable for negligence or for nonfeasance in the exercise of a governmental function."

The above statement of the trial court is an excellent pronouncement of the law governing the liability of a county and its officers, as established by many decisions of this court. As to the county's liability, see Snethen v. Harrison County, 172 Iowa 81, 152 N.W. 12; Shirkey v. Keokuk County, 225 Iowa 1159, 275 N.W. 706, 281 N.W. 837; Bruggeman v. Independent School Dist., 227 Iowa 661, 289 N.W. 5. The doctrine of all of these cases is that absolution from liability of a County for acts of misfeasance, nonfeasance or malfeasance of its officers rests upon the ground that counties are involuntary, territorial and political divisions of the state, upon which no liability can be imposed without legislative sanction.

██ As to the liability of the county officers the law is just as well settled that county officers are clothed with governmental immunity for acts of nonfeasance. Snethen v. Harrison County, supra; Wood v. Boone County, 153 Iowa 92, 133 N.W. 377, 39 L. R. A., N. S., 168, Ann. Cas. 1913D 1070; Shirkey v. Keokuk County, supra; Rowley v. Cedar Rapids, 203 Iowa 1245, 212 N.W. 158, 53 A. L. R. 375; Smith v. Iowa City, 213 Iowa 391, 239 N.W. 29. The acts charged in the petition: the failure to install gate fills and the failure to maintain the ditch can only be described as acts of nonfeasance. Williams v. Dean, 134 Iowa 216, 111 N.W. 931, 11 L. R. A., N. S., 410. In general the petition charged the Board with omission or failure to do that which it should have done, resulting in his damage. No recovery against the Board for such damages can be had.

The decree of the trial court is reversed as to the holding that plaintiff is not entitled to the gate fill from the highway to his land in Section 20, and remanded for decree ordering the County to install such gate fill, and in all other respects the

318

decree of the trial court is affirmed; the costs to be taxed two thirds to plaintiff and one third to defendants.—Affirmed in part and reversed in part.—All JUSTICES concur.