MARION BOYER, appellant, v. IOWA HIGH SCHOOL ATHLETIC ASSOCIATION and INDEPENDENT SCHOOL DISTRICT
OF MASON CITY, appellees.

CARROLL GARLAND, appellant, v. IOWA HIGH SCHOOL ATHLETIC
ASSOCIATION et al., appellees.

## No. 51235.

(Reported in 127 N.W.2d 606)

338

Pappas & Senneff, of Mason City, for appellants.

Westfall, Laird & Burington and Beck & Butler, all of Mason City, for appellees.

GARFIELD, C. J.—Two paying spectators at a high-school tournament basketball game brought law actions against the Iowa High School Athletic Association and the Independent School District of Mason City to recover for personal injuries from collapse of the bleachers. The trial court sustained the school district's motion to dismiss on the ground it was an agency of the state, not liable for negligence in the discharge of a governmental function in the absence of statutory authority for the actions. Plaintiffs appeal from the dismissal. No determination has been made as to the athletic association's liability and that question is not before us.

Since the actions are identical we will refer to only one of them.

I. The single error relied on for reversal is the sustaining of the motion in that, it is said, the doctrine of governmental

immunity should be abrogated in Iowa as outmoded, harsh and not in keeping with the modern trend of the law. Unquestionably adherence to our prior decisions over a period of nearly a hundred years would lead to an affirmance.

█ The school district is a quasi corporation, an arm or agency of the state, created by the legislature to carry out the governmental function of maintaining public schools. Bloomfield v. Davis County Community School Dist., 254 Iowa 900, 904, 119 N.W.2d 909, 912, and citations.

As such a quasi corporation a school district does not differ essentially from a county except that its functions and the purposes of its organization are fewer and more restricted. Lane v. District Township of Woodbury, 58 Iowa 462, 463, 12 N.W. 478.

█ These quasi corporations are to be distinguished from municipal corporations proper, such as cities, which are more amply endowed with corporate functions, conferred in general at the request of the inhabitants of the municipality for their peculiar and special advantage and convenience. Soper v Henry County (Dillon, J.), 26 Iowa 264, 267; Snethen v. Harrison County, 172 Iowa 81, 85, 86, 152 N.W. 12, 13; Larsen v. Independent School District, 223 Iowa 691, 700, 701, 272 N.W. 632; Shirkey v. Keokuk County, 225 Iowa 1159, 1170, 275 N.W. 706, 281 N.W. 837.

Commencing with Soper v. Henry County, supra, in 1868, we have consistently and repeatedly held, with three exceptions later to be mentioned, that such quasi corporations as counties and school districts are not liable for negligence in the absence of a statute so providing. Speaking of the liability of such "involuntary * *. * divisions of the state", the Soper opinion holds (pages 267, 271 of 26 Iowa): "To the statute they owe their creation, and the statute confers upon them all the powers which they possess, prescribes all the duties which they owe, and imposes all the liabilities to which they are subject. * * * If the county ought to be liable in such a case, the remedy must be sought from the legislature."

Snethen v. Harrison County, Larsen v. Independent School District, Shirkey v. Keokuk County, all supra, and Post v. Davis

County, 196 Iowa 183, 192, 193, 191 N.W. 129, 194 N.W. 245, are among decisions which repeat the quoted language. To like effect are Cunningham v. Adair County, 190 Iowa 913, 915, 916, 181 N.W. 20; Bruggeman v. Independent School Dist., 227 Iowa 661, 664, 289 N.W. 5; Perkins v. Palo Alto County, 245 Iowa 310, 317, 60 N.W.2d 562, 565; Wittmer v. Letts, 248 Iowa 648, 651, 80 N.W.2d 561, 562.

In 1908 Wenck v. Carroll County (Weaver, J.), 140 Iowa 558, 560, 118 N.W. 900, observed: "The rule which has heretofore obtained does not often work substantial injustice, and, if it is to be materially modified or overthrown, it should be done by an expression of the legislative will to that effect."

██ That our decisions correspond with many others to the effect a school district is not liable, in the absence of statute, for injury to pupils or others by reason of the condition of the school premises, see the annotations in 9 A. L. R. 911 and those supplementing it; 40 A. L. R. 1091; 160 A. L. R. 7, 127 et seq.; 86 A. L. R.2d 489, 545, 546.

The annotation in 160 A. L. R. 7, 127, 129, cites many decisions in support of this rule: "* * * in the absence of statute, it is the general rule that school districts * * * are immune from liability in tort for the personal injuries or death of pupils or other persons resulting from the dangerous, defective, unsafe, or negligent condition of school buildings, school grounds, or other school facility or equipment on school premises, * * *.

"A similar rule obtains with respect to the liability of counties, or towns not having the status of a municipal corporation, while in charge of public school premises."

To like effect is annotation, 86 A. L. R.2d 489, 546.

We now mention the three exceptions we have recognized to the rule of nonliability of quasi-public corporations.

(1) Counties were held liable for injury from defective bridges and approaches thereto. This was first recognized in Wilson & Gustin v. Jefferson County, 13 Iowa 181. After a change in the applicable statute the cited decision and those which followed it were overruled in Post v. Davis County, supra, 196 Iowa 183, 191, 191 N.W. 129, 194 N.W. 245, where "we return to the fundamental principle of nonliability of the county,

in the absence of legislation creating liability" (pages 195, 196).

(2) Ness v. Independent School Dist., 230 Iowa 771, 298 N.W. 855, holds the district liable in damages for a nuisance.

(3) Wittmer v. Letts, supra, 248 Iowa 648, 80 N.W.2d 561, holds a county liable for injury to a paying patient in its hospital by reason of the negligence of an employee, on the theory maintenance of the hospital was a proprietary, not a governmental, function.

■■ II. The trial court ruled that holding the basketball tournament was a governmental function, not a proprietary one. There is no room for a contrary holding here on this point. Plaintiff does not contend the court erred in this respect. As previously indicated, her sole assigned error is that the whole doctrine of governmental immunity is outmoded and should be abrogated by the courts. It is of course fundamental that a law case will not be reversed on a possible error not assigned and argued. See rule 344(a)(4)(Third), Rules of Civil Procedure.

We may observe many authorities support the view the school district was engaged in a governmental function even though spectators at the game were charged admission. They include Richards v. School District, 348 Mich. 490, 83 N.W.2d 643, 648–654; Mokovich v. Independent School Dist., 177 Minn. 446, 225 N.W. 292, 293; Rhoades v. School District, 115 Mont. 352, 142 P.2d 890, 160 A. L. R. 1, 6; Brown v. Board of Trustees, 303 N. Y. 484, 104 N.E.2d 866, 34 A. L. R.2d 720, 723; Smith v. Hefner, 235 N. C. 1, 68 S.E.2d 783, 788; Reed v. Rhea County, 189 Tenn. 247, 225 S.W.2d 49; Annotations, 160 A. L. R. 7, 67, 68, 182, 191, 192; 86 A. L. R.2d 489, 576, 582–584. Sawaya v. Tucson High School Dist., 78 Ariz. 389, 281 P.2d 105, is the only contrary precedent called to our attention.

We may also observe, without deciding the point, there is much authority that a school district exercises only governmental functions. Reed v. Rhea County, supra; Annotations, 160 A. L. R. 7, 65–68; 86 A. L. R.2d 489, 516–520. See also Lane v. District Township of Woodbury, supra, 58 Iowa 462, 463, 12 N.W. 478; Larsen v. Independent School District, supra, 223 Iowa 691, 700, 701, 272 N.W. 632.

■ III. We have held many times that if the doctrine of

governmental immunity is to be changed it should be done by the legislature. We have already referred to Wenck v. Carroll County, 140 Iowa 558, 560, 118 N.W. 900, and other early cases. Decisions to like effect include Florey v. City of Burlington, 247 Iowa 316, 320, 321, 73 N.W.2d 770, 772; McGrath Bldg. Co. v. City of Bettendorf, 248 Iowa 1386, 1392, 85 N.W.2d 616, 620, 68 A. L. R.2d 1429; Monroe v. Razor Constr. Co., 252 Iowa 1249, 1255, 1256, 110 N.W.2d 250, 254.

See also Genkinger v. Jefferson County, 250 Iowa 118, 121, 93 N.W.2d 130, 132, which states, "While this rule of governmental immunity as to counties * * * is a court-made rule, it has been in substance the law of the state for many years. We feel it is based upon sound reason and are not inclined to change it."

The position we have taken accords with that of most courts. The annotation in 86 A. L. R.2d 489, 501, says: "Undoubtedly, there is more criticism now of the doctrine of governmental immunity and its various underlying reasons, but in most instances the courts have felt that any relief should come from the legislature, particularly in view of the fact that the immunity doctrine in most jurisdictions has been adhered to for a great many years."

We think experience in the few states where the court has attempted to abrogate the immunity doctrine indicates legislative action is a better solution. The two principal precedents plaintiff cites are Molitor v. Kaneland Community Unit Dist., 18 Ill.2d 11, 163 N.E.2d 89, 86 A. L. R.2d 469, and Spanel v. Mounds View School Dist., 264 Minn. 279, 118 N.W.2d 795. They are the only decisions cited where the court abrogates the immunity doctrine as directly applied to a school district. In both cases the decision was to operate prospectively.

In Illinois the new court-made rule was to apply to the instant case and to such others only as arose out of future occurrences. The state legislature promptly reinstated immunity as to certain governmental subdivisions. See Spanel v. Mounds View School Dist., supra, 264 Minn. 279, 118 N.W.2d 795, 801; Clark v. Ruidoso-Hondo Valley Hosp., 72 N. M. 9, 380 P.2d 168, 169; Illinois Rev. Stat., 1959, chapter 34, section 301.1; chapter

57½, section 3a; chapter 105, sections 12.1–1, 333.2a and 491. See also chapter 122, section 821, in which the legislature finds and enacts the public policy of Illinois, section 822 which limits to one year the time for commencing action against any school district or nonprofit private school for injury to person or property, and section 825 of chapter 122 which limits recovery against such schools to $10,000 for each cause of action. See also annotation, 86 A. L. R.2d at 526; Comment 46 Iowa Law Review 196, 202.

The existence of an Illinois statute as to liability insurance school districts were permitted to obtain may have had a bearing on the decision in the Molitor case. Under the statute, if there were insurance the insurer must waive the right to refuse payment by reason of the immunity of the insured.

The Minnesota case, supra, even more persuasively demonstrated the desirability of leaving to the legislature the matter of abrogating the immunity rule. There dismissal of the action on the ground of governmental immunity was affirmed but by way of what was admittedly dictum it was stated that with respect to torts committed after the next regular session of the state legislature the doctrine would not be recognized, subject to existing or subsequent statutes which would limit or regulate the prosecution of such claims. The opinion suggests these matters, among others, which might well receive the attention of the legislature:

"(1) A requirement for giving prompt notice of the claim after the occurrence of the tort, (2) a reduction in the usual period of limitations, (3) a monetary limit on the amount of liability, (4) the establishment of a special claims court or commission, or provision for trial by the court without a jury, and (5) the continuation of the defense of immunity as to some or all units of government for a limited or indefinite period of time" (page 293 of 264 Minn., page 804 of 118 N.W.2d).

The Minnesota court "readily concede that the flexibility of the legislative process—which is denied the judiciary—makes [that] avenue of approach more desirable" (page 292 of 264 Minn., page 803 of 118 N.W.2d).

The Spanel opinion concludes, "It may appear unfair to

deprive the present claimant of his day in court. However, we are of the opinion it would work an even greater injustice to deny defendant and other units of government a defense on which they have had a right to rely. * * *."

Fette v. City of St. Louis, Mo., 366 S.W.2d 446, 447, 448 (Hyde, J.), considers the Minnesota case, supra, and the same other precedents plaintiff cites here, later to be mentioned herein. We agree with this from the Fette opinion: "We think the above-cited recent Minnesota case shows why this is properly a matter for the legislature." After referring to the five suggested proposals we have quoted above, found in the Minnesota case, the Fette opinion proceeds, "If such legislation is required by the abrogation of this doctrine, and we think it is, it is our view that the whole matter should be left to the legislature."

The Missouri court then takes note of the moratorium the California legislature promptly declared on the particular claim and others similarly situated following the decision in Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457, cited by plaintiff here, and the legislation in Illinois following the Molitor decision, supra, and concludes, "All this confirms our view that whatever is done to change the doctrine of governmental immunity should be done by the legislature and not by the courts."

IV. Aside from the Molitor and Spanel decisions just discussed, plaintiff relies on these other out-of-state precedents: Stone v. Arizona Highway Comm., 93 Ariz. 384, 381 P.2d 107; Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457; Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130, 60 A. L. R.2d 1193; Williams v City of Detroit, 364 Mich. 231, 111 N.W.2d 1; Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618.

We have just referred to the moratorium promptly enacted by the legislature on the Muskopf claim and others similarly situated, following the cited California decision. See Corning Hospital Dist. v. Superior Court, 57 Cal.2d 488, 20 Cal. Rptr. 621, 370 P.2d 325. We may observe that two years later the legislature again passed laws on the subject of immunity and the intermediate appellate court held effect of both legislative

enactments was merely to suspend operation of the Muskopf decision. Bell v. City of Palos Verdes Estates, Cal. App., 36 Cal. Rptr. 424, 426, 427.

In Hargrove, supra, a town was held liable for negligently causing death of a prisoner in the jail. The precedent is not authority for plaintiff here. Two years later the Florida appellate court held a county school board was immune from liability for negligence in maintaining an athletic field. Buck v. McLean, 115 So.2d 764, 767. The court holds: "There is nothing in this [Hargrove] decision which says, or from which it can be reasonably inferred, that the rule there announced is likewise applicable to the State of Florida, or its several counties and boards of public instructions." The Florida Supreme Court has cited Buck v. McLean with apparent approval. Kaulakis v. Boyd, 138 So.2d 505, 507.

In Williams v. City of Detroit, supra, an equally divided court holds the city was not liable for death from falling into an unguarded elevator shaft in a municipal building but by a vote of five to three abolished the immunity doctrine as to like causes thereafter arising. In a long separate opinion the judge who cast the deciding vote on this question sought to justify his position in these words (page 287 of 364 Mich., page 18 of 111 N.W.2d):

"Regrettably, release of these opinions cannot be delayed until the legislature is in session. * * *.

"* * * The Governor may call a special legislative session to authorize purchase and maintenance by municipal corporations of liability insurance pending the regular session and such contemplative study of the situation as may result in legislative determination to effect strict immunity by statute; modified immunity by statute; amount-limited liability by statute, or full liability by statute with insured protection."

Later Michigan precedents make it clear the Williams case applies only to municipal corporations proper, not to such state agencies as school districts. McDowell v. Mackie, 365 Mich. 268, 112 N.W.2d 491; Sayers v. School District, 366 Mich. 217, 114 N.W.2d 191; Stevens v. City of St. Clair Shores, 366 Mich. 341, 115 N.W.2d 69.

Governmental immunity of a city for torts is prospectively abrogated in Holytz v. City of Milwaukee, supra, 17 Wis.2d 26, 40, 115 N.W.2d 618, 625, but the court says the decision applies also to all public bodies in the state, including school districts, but the state itself may be sued only upon its consent. The opinion observes: "If the legislature deems it better public policy, it is, of course, free to reinstate immunity. The legislature may also impose ceilings on the amount of damages or set up administrative requirements which may be preliminary to the commencement of judicial proceedings for an alleged tort." At least this last sentence seems to be by way of suggestion to the legislature.

In Clark v. Ruidoso-Hondo Valley Hospital, supra, 72 N. M. 9, 13, 380 P.2d 168, 171, plaintiff cited the same precedents cited to us here. After carefully considering them the court concludes, "The not-too-satisfactory experience in most of those jurisdictions which have attempted to overrule the immunity doctrine by court decision should make it obvious that legislative action on the subject is the preferred solution."

V. It is clear our legislature has been fully aware of the long-standing public policy of our state as to governmental immunity and has given thought relative thereto. In many instances the legislature has recognized the doctrine of governmental immunity from liability for torts while engaged in governmental functions and has taken limited action in this field. We mention some of these instances. Several statutes authorize the purchase of liability insurance although none confers authority on school districts to purchase insurance to cover such a claim as this for which we have uniformly held there is no liability.

Section 321.497, Code, 1962, provides a city, town or township maintaining a police or fire department may purchase liability insurance covering individuals or groups in such departments. Section 404.8(6) confers power on municipal corporations to levy a tax to be used, among other purposes, to pay premiums on insurance authorized by 321.497.

Section 368A.1(12) confers power on municipal corpora-

tions to purchase liability and property damage insurance covering municipal employees while operating certain vehicles owned or used by the corporations.

Section 517A.1, quoted in Johnson v. Baker, 254 Iowa 1077, 1088, 1089, 120 N.W.2d 502, 508, 509, authorizes purchase of liability "insurance covering all officers, *proprietary functions* and employees of such public bodies * * *" (emphasis added).

Section 368.11 states, "They [cities and towns] may provide conditions upon which the fire department will answer calls outside the corporate limits * * * *and the corporation shall have the same governmental immunity as when operating within the corporate limits*" (emphasis again added).

. Another legislative recognition of governmental immunity of cities and towns is found in chapter 235, Laws of the Sixtieth General Assembly, effective July 4, 1963: "It is hereby declared to be the policy of the state of Iowa that the provisions of the Code relating to the powers, privileges, and immunities of cities and towns are intended to confer broad powers of self-determination as to strictly local and internal affairs upon such municipal corporations and should be liberally construed in favor of such corporations."

The state senate in the last regular legislative session passed a state torts claim Act (Senate File 377) although it was not passed by the house and, of course, did not become law.

It seems clear from the above that the legislature has not closed its eyes to problems surrounding the immunity rule.

VI. As above indicated, whether or not the state or any of its political subdivisions or governmental agencies are to be immune from liability for torts is largely a matter of public policy. The legislature, not the courts, ordinarily determines the public policy of the state. State v. Bruntlett, 240 Iowa 338, 355, 356, 36 N.W.2d 450, 460; In re Disinterment of Jarvis, 244 Iowa 1025, 1031, 58 N.W.2d 24, 27, and citations; 16 C. J. S., Constitutional Law, section 151(1)b, page 733 "* * * policy questions are for the legislature and not for the courts."

Although the doctrine of governmental immunity may have been of ancient judicial origin, it has been recognized as the policy of the state by the limited action of the legislature

toward relaxation. The purposes for which public funds may be expended are limited by statute. The legislature recognized and relaxed the limitation by passage of laws authorizing purchase of liability insurance covering proprietary functions and officers and employees of certain public bodies. Had the legislature favored complete abrogation of the immunity rule, as plaintiff contends for, it could have said so and authorized purchase of insurance protecting against such a claim as here asserted. It is significant the legislature did not do so.

In the particulars wherein the legislature has acted we have a clear recognition of legislative responsibility for action in the field of public policy. The limited action taken shows more than mere tacit approval of the long-standing doctrine left unchanged.

Our problem is whether we should now interfere and by judicial decision overrule a public policy doctrine that is more appropriately left to the legislature. We think not.

VII. We are fully aware of the trend away from governmental immunity. We took note of it in Brown v. Sioux City, 242 Iowa 1196, 1201, 49 N.W.2d 853, 857, and Florey v. City of Burlington, supra, 247 Iowa 316, 320, 73 N.W.2d 770, 772. Florey is the same case in which we said any substantial modification of the rule must come by legislation. As pointed out, subsequent decisions adhere to this view. Consideration of the problems of legislative versus judicial abrogation of the rule, including the precedents plaintiff cites to us, leaves us satisfied the policy we have announced is the preferred one.

VIII. The writer joined in a concurring opinion to Moore v. Murphy, 254 Iowa 969, 973–976, 119 N.W.2d 759, 762, 763, which warned that the doctrine of governmental immunity might be re-examined in the near future. This has now been done. The conclusion reached from such re-examination is, as stated, that abrogation of the doctrine should come from legislative, not judicial, action. This is the position we have repeatedly taken and, as pointed out, that taken "in most instances," by other courts (annotation, 86 A. L. R.2d 489, 501). It may be added that when Moore v. Murphy was before us little, if any, consideration was given to the question whether the courts or

the legislature should act in the matter of abrogating the doctrine.—Affirmed.

THOMPSON, LARSON, SNELL, and STUART, JJ., concur.

MOORE, HAYS, PETERSON, and THORNTON, JJ., dissent.

MOORE, J.—I dissent.

As stated in the majority opinion appellant's sole assigned error is that the whole doctrine of governmental immunity is outmoded and should be abrogated by the court. Yet Division I consisting of several pages of the majority opinion is devoted to identifying quasi corporations as compared to municipal corporations. Both perform governmental functions and by prior decisions have some immunity from tort liability. Any attempt to distinguish between them as to liability for negligent use of bleachers at an athletic event would only add another ridiculous example of the doctrine. Our decisions have already created too many. For example, if a child is injured as a result of negligence at a private or Sunday school recovery may be had but if at a public school immunity bars recovery; if a street, public health, police or fire department vehicle is negligently operated causing injury immunity protects the public body but if done by a private corporation or an individual liability follows; if an individual is injured in a public park or airport immunity may or may not apply depending on the location on the premises; if a defect in a street causes injury recovery is permitted if within a city but is barred by the doctrine of immunity if on a county road. Others could be cited.

We are not alone in being faced with the problem of eliminating such absurdities from the law. Text writers and law reviews have for the last several decades unanimously condemned such confusion and contradictions of municipal tort law. In recent years numerous other courts have denounced the municipal immunity doctrine and by decision have abrogated. Several will be quoted later in this dissent.

In 75 A. L. R. 1196, a classic observation as to the sociological aspects of sovereign immunity appears which has since been quoted with approval in several jurisdictions: "* * * The

whole doctrine of governmental immunity from liability for torts rests upon a rotten foundation. It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, 'the King can do no wrong,' should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs."

The majority opinion does not dispute the modern trend which recognizes the immunity rule is unjust, unsupported by any valid reason and has no rightful place in modern society but refuses to follow the holding of an overwhelming majority of the more recent cases that being court-made the rule should be eliminated by its creator. To hold the legislature should bury this court's mistakes of the past seems as illogical as the rule itself.

The annotation in 86 A. L. R.2d 489 follows the case of Molitor v. Kaneland Community Unit Dist., 18 Ill.2d 11, 163 N.E.2d 89, 86 A. L. R.2d 469. That decision abolishes the previous long existing tort immunity of school districts in Illinois. It permits recovery for injuries received by a child while riding on a school bus. It recognizes the principle of stare decisis makes the accomplishment of justice its primary object and does not compel the blind following of precedents.

On page 502, 86 A. L. R.2d, the editor states:

"This case may be of great significance even outside Illinois, because of the impact it conceivably will have on those courts which adhere to the immunity rule with ever-increasing reluctance and which may be swayed by the courageous example of the Illinois Supreme Court, as well as by its arguments, to reconsider their position in the light of new developments."

Indeed it has had great impact and has been followed by almost all recent opinions written on the subject.

Molitor v. Kaneland Community Unit Dist., supra, at pages 20, 25 of 18 Ill.2d, pages 93, 96 of 163 N.E.2d, states:

"It is a basic concept underlying the whole law of torts today that liability follows negligence, and that individuals and corporations are responsible for the negligence of their agents and employees acting in the course of their employment. The doctrine of governmental immunity runs directly counter to that basic concept. What reasons, then, are so impelling as to allow a school district, as a quasi-municipal corporation, to commit wrongdoing without any responsibility to its victims, while any individual or private corporation would be called to task in court for such tortious conduct? * * *

"Defendant strongly urges that if said immunity is to be abolished, it should be done by the legislature, not by this court. With this contention we must disagree. The doctrine of school district immunity was created by this court alone. Having found that doctrine to be unsound and unjust under present conditions, we consider that we have not only the power, but the duty, to abolish that immunity. 'We closed our courtroom doors without legislative help, and we can likewise open them.' Pierce v. Yakima Valley Memorial Hospital Assn., 43 Wash.2d 162, 260 P.2d 765, 774."

In Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130 (written before Molitor), the Florida court abolished the long established municipal corporation immunity from liability for the torts of police officers. At page 132 it is said:

"The appellee here contends that any recession from the rule of immunity should come about by legislation rather than judicial decree. It is insisted that the immunity rule is a part of the common law which we have adopted and that therefore its abolition should come about only by statute. We are here compelled to disagree. * * * We can see no necessity for insisting on legislative action in a matter which the courts themselves originated."

The court continues on the next page:

"In doing this we are thoroughly cognizant that some may contend that we are failing to remain blindly loyal to the doctrine of stare decisis. However, we must recognize that the law

is not static. The great body of our laws is the product of progressive thinking which attunes traditional concepts to the needs and demands of changing times. The modern city is in substantial measure a large business institution. While it enjoys many of the basic powers of government, it nonetheless is an incorporated organization which exercises those powers primarily for the benefit of the people within the municipal limits who enjoy the services rendered pursuant to the powers. To continue to endow this type of organization with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century anachronism. *Judicial consistency loses its virtue when it is degraded by the vice of injustice.*" (Emphasis ours.)

This writer feels compelled to cite and quote several opinions written subsequent to Molitor v. Kaneland.

McAndrew v. Mularchuk, 33 N. J. 172, 193, 162 A.2d 820, 832, overrules many earlier cases and holds a city liable for injury to a child negligently shot by a policeman. Therein it is said:

"The borough argues that any such change should come about, if at all, by action of the Legislature. But the limitation on the normal operation of respondeat superior was originally placed there by the Judiciary. Surely it cannot be urged successfully that an outmoded, inequitable, and artificial curtailment of a general rule of action created by the judicial branch of the government cannot or should not be removed by its creator."

The California Supreme Court in Muskopf v. Corning Hospital Dist., 55 Cal.2d 211, 213, 218, 359 P.2d 457, 458, 461, states:

"After a reevaluation of the rule of governmental immunity from tort liability we have concluded that it must be discarded as mistaken and unjust. * * *

"It is strenuously urged, however, that it is for the Legislature and not the courts to remove the existing governmental immunities. Two basic arguments are made to deny the court's power: first, that by enacting various statutes affecting immunity the Legislature has determined that no further change

is to be made by the court; and second, that by the force of stare decisis the rule has become so firmly entrenched that only the Legislature can change it. Neither argument is persuasive.

"The doctrine of governmental immunity was originally court made. * * *

"The state has also enacted various statutes waiving substantive immunity in certain areas. * * *

"Nor are we faced with a comprehensive legislative enactment designed to cover a field. What is before us is a series of sporadic statutes, each operating on a separate area of governmental immunity where its evil was felt most. Defendant would have us say that because the Legislature has removed governmental immunity in these areas we are powerless to remove it in others. We read the statutes as meaning only what they say: that in the areas indicated there shall be no governmental immunity. They leave to the court whether it should adhere to its own rule of immunity in other areas."

As observed in Division V of the majority opinion our legislature also has enacted a few statutes which indirectly recognize some of the evils of the doctrine of governmental immunity but they leave its elimination to us. The injustices resulting therefrom are caused by our rule. Why should the legislature interfere when we refuse to correct our past mistakes? It is our duty to see that justice is done. "Policy" or any other reason does not justify our inaction.

In Williams v. City of Detroit, 364 Mich. 231, 284, 111 N.W.2d 1, 16, 17, the doctrine of governmental immunity is abrogated prospectively by the court. That court cites and quotes at great length many legal writings, law reviews and decisions by other courts dealing with the problems now before us, and there said:

"All distinguished writers recommend corrective legislation, enacted with the adjusted detail carefully drawn statutes only can provide. So do I. But what is an appellate court to do when the legislative process remains comatose, year after year and decade after decade, the court meanwhile bearing the onus of what was done judicially during the dim yesterdays and maintained to this day by the self-stultifying fetish of stare decisis?

Must the court continue to proclaim its impotence as legislators shrug their responsibility with a nod of risus sardonicus toward the error-guilty judicial branch? My answer is that this Court may relieve itself of past error by confessing and adjudging that error, and that it may at the same time force what all students of the problem have rightly sought for lo these many years; a statute relieving the injured citizen from the total burden of municipal negligence and still controlling the result so that municipal functions may be carried on without serious financial risk."

The Wisconsin court after extensive review of legal writings, decisions of other courts and its own contrary precedents joins the ever-increasing parade of courts in abrogating governmental immunity in Holytz v. City of Milwaukee, 17 Wis.2d 26, 33, 37, 115 N.W.2d 618, 621, 623, stating:

"There are probably few tenets of American jurisprudence which have been so unanimously berated as the governmental-immunity doctrine. This court and the highest courts of numerous other states have been unusually articulate in castigating the existing rule; text writers and law reviews have joined the chorus of denunciators. * * *

"We are satisfied that the governmental-immunity doctrine has judicial origins. Upon careful consideration, we are now of the opinion that it is appropriate for this court to abolish this immunity notwithstanding the legislature's failure to adopt corrective enactments."

The question of the scope of the abrogation of the rule is answered by the Wisconsin court at page 40 of 17 Wis.2d, page 625 of 115 N.W.2d:

"The case at bar relates specifically to a city; however, we consider that abrogation of the doctrine applies to all public bodies within the state: The state, counties, cities, villages, towns, school districts, sewer districts, drainage districts, and any other political subdivisions of the state—whether they be incorporated or not."

Following the above cited cases and others our sister state to the north, Minnesota, in a case involving injury to a child from a defective slide in a kindergarten classroom prospectively

abrogated by court decision the doctrine of governmental immunity.

Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795 (December 1962), brands the rule as archaic and prospectively overruled as a defense with respect to tort claims against school districts, municipal corporations, and other subdivisions of government on whom immunity had been conferred by judicial decision. At pages 291, 292 of 264 Minn., page 803 of 118 N.W.2d, it is said:

"The Minnesota Legislature has not wholly ignored the problem. School districts have been authorized to provide liability insurance and to waive immunity with respect to claims so insured. Such laws are important steps toward mitigating the harshness of the immunity doctrine. However, we do not share the view that a court-made rule, however unjust or outmoded, becomes with age invulnerable to judicial attack and cannot be discarded except by legislative action."

The Nevada court in Rice v. Clark County, 382 P.2d 605, 608 (May 1963), holds sovereign immunity does not extend to counties so as to relieve them for their negligent operation of roads. The court states:

"It is contended that it is for the legislature and not the courts to remove immunity. We so stated in Taylor v. State and University, supra. There we were considering the liability of the State of Nevada and the University of Nevada for negligence. Here, where only a county's liability is involved, we do not hesitate to say that since its immunity was court made, this court as well as the legislature is empowered to reject it."

In Stone v. Arizona Highway Commission, 93 Ariz. 384, 393, 381 P.2d 107, 113 (April 1963), the doctrine of governmental immunity from tort liability is abolished. The Arizona court states:

"It has been urged by the adherents of the sovereign immunity rule that the principle has become so firmly fixed that any change must come from the legislature. In previous decisions (the latest being Lee v. Dunklee, supra) this court concurred in this reasoning. Upon reconsideration we realize that the doctrine of sovereign immunity was originally judicially created. We

are not convinced that a court-made rule, when unjust or out-moded, does not necessarily become with age invulnerable to judicial attack. This doctrine having been engrafted upon Arizona law by judicial enunciation may properly be changed or abrogated by the same process."

With such an almost unanimous holding as shown by these cases and others cited therein it is most difficult to understand the majority opinion. It cites and apparently relies on Clark v. Ruidoso-Hondo Valley Hospital, 72 N. M. 9, 380 P.2d 168, and Fette v. City of St. Louis, Mo., 366 S.W.2d 446.

In Clark v. Ruidoso, supra, the court refused to abrogate the governmental-immunity rule as against county hospitals primarily because the New Mexico legislature had made provisions for those injured by negligence of the state or a subdivision thereof in the event liability insurance was carried. At page 13 of 72 N. M., pages 170, 171 of 380 P.2d, it is said:

"We see no reason (the legislature having taken the action that it has) for the court to reconsider a rule of law that has been effective for so many years in this jurisdiction."

We have no such legislative enactment.

Fette v. City of St. Louis, supra, simply refuses to follow the modern authorities on the subject of whether the court or the legislature should abrogate the doctrine. It holds the matter should be left to the legislature because several state legislatures have taken some action after abrogation by the court. The fallacy of such an approach is clearly shown by the question—"What has happened in Missouri?" and the answer—"Nothing".

Several times in the past this court has suggested abrogation should come from the legislature. Nothing has been done to eliminate our court-made unjust rule. We should abrogate the rule now. As demonstrated in the cases any necessary legislative action will follow.

In the past we have admitted our mistakes, overruled precedents and adopted proper legal principles as indicated by modern trends and majority rules.

In Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120, we return to the common-law rule of negligence and recognize statutory requirements as being merely a minimum

standard. We overrule several prior cases. We also change an established rule of evidence and made evidence of prior similar accidents admissible. We said at page 363, 239 Iowa, pages 123, 124, 30 N.W.2d: "This rule is neither based upon reason nor sound judgment and should not be persisted in."

Without hesitation we again overruled prior decisions.

In Stuart v. Pilgrim, 247 Iowa 709, 74 N.W.2d 212, this court changed completely the rule regarding liability of a non-driver owner of a motor vehicle. In doing so a long well established line of cases was overruled. At pages 713, 714, 247 Iowa, pages 215, 216, 74 N.W.2d, this court states:

"The problem before us now is whether more harm will be done by overruling our previous cases in order to install what we think is clearly the correct principle, or by adhering to an unsound decision in the interest of the rule of stare decisis. It is of the greatest importance that the law should be settled. Fairness to the trial courts, to the legal profession, and above all to citizens generally demands that interpretations once made should be overturned only for the most cogent reasons. *The law should be progressive; it should advance with changing conditions.* But this does not mean that its forward progress should be over the dead bodies of slain and discarded precedents. Legal authority must be respected; not because it is venerable with age, but because it is important that courts, and lawyers and their clients may know what the law is and order their affairs accordingly.

"We have concluded here, however, that more mischief will be done by adhering to the precedent established in the Secured Finance Company case than by overruling. *It proceeds upon a wrong principle, built upon a false premise, and arrives at an erroneous conclusion.* It is of course incumbent upon us to make clear our reasons for so determining." (Emphasis added.)

In Haynes v. Presbyterian Hosp. Assn., 241 Iowa 1269, 1273, 1274, 45 N.W.2d 151, 154, this court abrogates the doctrine of immunity of charitable institutions for negligence of its agents. Prior decisions were overruled. We said:

"Thus it is evident that times have changed and are now changing in the business, social, economic and legal worlds. The

basis for and the need of such encouragement is no longer existent.

"The law's emphasis generally is on liability, rather than immunity, for wrongdoing. Charity is generally no defense. *It is for the legislature, not the courts, to create and grant immunity.* The fact that the courts may have at an early date, in response to what appeared good as a matter of policy, created an immunity does not appear to us a sound reason for continuing the same when under all legal theories it is basically unsound, and especially so when the reasons upon which it was built no longer exist." (Emphasis added.)

This last quote expresses exactly what I believe should be our views here. We need only to change "charity" to "governmental activity".

In fairness to the able trial court it must be stated he, like each trial judge in our last three cited cases, was duty bound to follow precedent. It is our responsibility and duty to alter decisional law to produce commonsense justice. As to our doctrine of governmental immunity we have already waited too long. I would join the vast majority of the other courts in abrogating it.

I would reverse.

HAYS, PETERSON and THORNTON, JJ., join in this dissent.