CITY OF WEST BRANCH, Appellant,

v.

Debra MILLER, Cedar County Assessor, and Patricia Meixner, Cedar County Auditor, Appellees.

No. 95–305.

Supreme Court of Iowa.

April 17, 1996.

Bruce D. Goddard, Iowa City, for appellant.

Carlton G. Salmons of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for appellees.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

A county purchased a public official's errors and omissions insurance policy through a local government risk pool. A city sued the county's assessor and auditor for allegedly failing to assess and collect taxes on newly annexed city property. The principle issue is whether purchase of the insurance policy waived the two officials' governmental immunity under Iowa Code section 670.7 (1993). The district court thought not and granted the two officials' joint motion for summary judgment. We disagree and reverse and remand for further proceedings.

## I. Background Facts.

The parties agree the following facts are undisputed. On November 3, 1987, the voters of the city of West Branch approved the involuntary annexation of certain real property into the city. The Cedar County Board of Supervisors certified the election results. The following week the Cedar County Auditor, as election commissioner, delivered a certification of those results to the city's Development Board. On January 6, 1988, the board issued its final order certifying the annexation of the property to the city as of December 24, 1987.

The auditor and the county's assessor failed to add the annexed property to the property tax base for the city. The city first discovered the omission during an informal conversation between county and city officials in 1994. The omission resulted in reduced property tax revenues to the city over a four-year period between 1989 and 1993.

In January 1988 the county joined the Heartland Insurance Risk Pool. Only Iowa counties were allowed to be members of the pool. The pool existed for member counties to self-fund certain insurance coverages or to have the pool acquire for its members those coverages that were not economically feasible to self-fund. The pool members decided to self-fund certain risks and have the pool purchase through private carriers insurance coverages for other risks. The public official's errors and omissions insurance was one type of private insurance the pool acquired for its members.

The pool acquired the private insurance on a group basis. The group basis purchase resulted in (1) lower costs for the private insurance, (2) better coverage terms, and (3) access to insurance that might not have been available if an individual county sought to purchase the insurance.

The pool purchased the public official's errors and omissions insurance from American Public Slip Entity. Any pool member had the choice of buying that particular policy. The county decided to do so and paid $10,798 in premiums for that policy. The county paid this premium to the pool, which in turn remitted that amount to Entity. Entity then issued the policy to the county.

## II. *Background Proceedings.*

In its suit against the assessor and auditor, the city made two allegations. First, the assessor and auditor failed—through omission, act of neglect, or breach of duty—to correctly assess and collect taxes for the city. Second, the assessor and auditor waived any immunity for their actions through the county's purchase of public official's errors and omissions liability insurance. The city asked for damages against the assessor and auditor equal to the amount of lost revenue.

The assessor and auditor answered, denying liability and asserting as an affirmative defense the immunity provisions of Iowa Code section 670.4(2). Later, the two officials moved for summary judgment, asserting they had not waived immunity because of the county's purchase of the liability insurance. The district court agreed and sustained the motion over the city's resistance.

The city appeals from the summary judgment ruling.

## III. *Scope of Review.*

Summary judgment is appropriate under Iowa Rule of Civil Procedure 237 only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. No fact question exists if the only dispute concerns the legal consequences flowing from undisputed facts. In such circumstances, summary judgment is proper. On appeal of a summary judgment ruling, then, we must decide (1) whether a genuine issue of material fact exists, and (2) if the law was correctly applied. *Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co.,* 495 N.W.2d 723, 726 (Iowa 1993)

(citations omitted). Here the facts are undisputed and the only dispute concerns the legal consequences flowing from those facts. Our question, then, is to determine whether the district court correctly applied the law.

## IV. *Governmental Immunity.*

A. *Applicable law.* Iowa Code section 670.2 subjects municipalities to liability for their torts and those of their officers and employees. It states in pertinent part:

> Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.

For the purposes of section 670.2, a county is a municipality. *See* Iowa Code § 670.1(2).

Iowa Code section 670.4 immunizes municipalities from tort liability arising in several specific instances. At issue here is Iowa Code section 670.4(2), immunizing municipalities from tort liability for "[a]ny claim in connection with the assessment or collection of taxes."

Iowa Code section 670.12—with several exceptions—immunizes all officers and employees of municipalities from tort liability as to all claims exempted in section 670.4:

> All officers and employees of municipalities are not personally liable for claims which are exempted under section 670.4, except claims for punitive damages, and actions permitted under section 85.20. An officer or employee of a municipality is not liable for punitive damages as a result of acts in the performance of a duty, unless actual malice or willful, wanton and reckless misconduct is proven.

Municipalities waive section 670.4 immunities when they purchase liability insurance under the conditions specified in Iowa Code section 670.7.

B. *Background.* Before considering the issues raised, we think it would aid our analysis to review the state of the law leading up to the enactment of section 670.7. Before enactment of statutes waiving governmental

immunity, counties were not as a rule liable for torts committed by them in the exercise of a governmental function. The rule was otherwise if the tort was committed in the exercise of a county's proprietary or private function. *Wittmer v. Letts,* 248 Iowa 648, 650–52, 80 N.W.2d 561, 562–63 (1957). County employees were still liable for their own torts even though such employees were engaged in a governmental function and even though the county was exempt under governmental immunity. *Anderson v. Calamus Community Sch. Dist.,* 174 N.W.2d 643, 644 (Iowa 1970) (citation omitted).

In addition, if the county purchased liability insurance, such purchase in no way waived the county's right to raise its defense of governmental immunity. *McGrath Bldg. Co. v. City of Bettendorf,* 248 Iowa 1386, 1392–94, 85 N.W.2d 616, 620–21 (1957). We considered the insurance as protecting against liability and not as creating or increasing liability. *Id.*

The Iowa Tort Claims Act was enacted in 1965. *See* 1965 Iowa Acts ch. 79. It allowed claims against the State of Iowa but not against its political subdivisions, such as counties, school districts, cities, and the like. *Graham v. Worthington,* 259 Iowa 845, 853–55, 146 N.W.2d 626, 632–33 (1966).

In 1967 the legislature passed legislation allowing claims against named governmental subdivisions—including counties—under certain stated conditions. *See* 1967 Iowa Acts ch. 405. This legislation was first codified in the 1971 Iowa Code as chapter 613A.

Iowa Code section 613A.7 (1971), now section 670.7, pertinently provided:

> The governing body of any municipality may purchase a policy of liability insurance insuring against all or any part of liability which might be incurred by such municipality or its officers, employees and agents under the provisions of section 613A.2 [now section 670.2] and may similarly purchase insurance covering torts specified in section 613A.4 [now section 670.4].... The procurement of such insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 613A.4 [now section 670.4] to the extent stated in such policy but shall

have no further effect on the liability of the municipality beyond the scope of this chapter....

*See* Iowa Code § 613A.1 (defining municipality to include counties).

In 1986 the legislature substantially modified and amended section 613A.7. *See* 1986 Iowa Acts ch. 1211, § 34. Section 613A.7 with those amendments now appears as section 670.7. This change from chapter 613A to chapter 670 occurred in the 1993 Iowa Code. Section 670.7—with the 1986 amendments italicized—now pertinently provides:

> The governing body of a municipality may purchase a policy of liability insurance insuring against all or any part of liability which might be incurred by the municipality or its officers, employees, and agents under section 670.2 [formerly section 613A.2] and section 670.8 [formerly section 613A.8] and may similarly purchase insurance covering torts specified in section 670.4 [formerly section 613A.4]. *The governing body of a municipality may adopt a self-insurance program, including but not limited to the investigation and defense of claims, the establishment of a reserve fund for claims, the payment of claims, and the administration and management of the self-insurance program, to cover all or any part of the liability. The governing body of a municipality may join and pay funds into a local government risk pool to protect itself against any or all liability....* The procurement of such insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4 [formerly section 613A.4] to the extent stated in the policy ..., *but if a municipality adopts a self-insurance program or joins and pays funds into a local government risk pool such action does not constitute a waiver of the defense of governmental immunity as to the exceptions listed in section 670.4 [formerly section 613A.4].... A self-insurance program or local government risk pool is not insurance and is not subject to regulation under chapters 505 through 523C.*

Before the 1986 amendments, a municipality could purchase liability insurance to cover claims specified in section 670.4. If it did so, such a purchase constituted a waiver of governmental immunity as to those claims to the extent stated in the policy.

After the 1986 amendments, the municipality has several options to protect itself against liability for claims specified in section 670.4. It can (1) purchase insurance, (2) self-insure, or (3) join and pay funds into a local government risk pool. If the municipality purchases insurance, such purchase constitutes a waiver of the defense of governmental immunity as to the claims listed in section 670.4 to the extent stated in the policy. If the municipality self-insures or joins and pays funds into a local governmental risk pool, its actions do not constitute such a waiver.

C. *The merits.* The city contends the county undisputably purchased a liability insurance policy that covers any claim in connection with the assessment or collection of taxes. Therefore, the city concludes, the county's purchase waived any governmental immunity as to such claims.

The assessor and auditor seek to uphold the district court ruling on several grounds. First, neither the county's participation in the risk pool nor the risk pool's procurement of the errors and omissions policy constituted a waiver of the immunity of section 670.4(2). Second, the errors and omissions policy did not expressly state, as required by section 670.7, that it was providing coverage for claims in connection with the assessment or collection of taxes. Last, the errors and omissions policy definition of "loss" excluded insurance coverage for the city's assessment or collection of taxes claims. This is so because the assessor and auditor would not be "legally obligated to pay" any claim for which there existed an immunity for the assessment or collection of taxes under section 670.4(2). For all these reasons, the assessor and auditor assert they are entitled to the immunity of section 670.4(2).

■■■ 1. *County's participation in the risk pool and the risk pool's procurement of the errors and omissions policy for the county.* In interpreting statutes, our ultimate goal is to determine legislative intent. *Peffers v. City of Des Moines,* 299 N.W.2d 675, 678 (Iowa 1980). When the language of a statute is plain and its meaning is clear, we should not reach for meaning beyond its express terms. *Meier v. Sac & Fox Indian Tribe,* 476 N.W.2d 61, 63–64 (Iowa 1991). Nor should we resort to statutory rules of construction to determine legislative intent. *Id.* at 64. When the statute's language is not clear and plain, we do resort to well-established rules of statutory construction. *Peffers,* 299 N.W.2d at 678. One such rule provides that we are bound by what the legislature said, rather than what it should or might have said. *State v. Jones,* 464 N.W.2d 241, 242 (Iowa 1990); Iowa R.App.P. 14(f)(13). We may not, under the guise of statutory construction, enlarge or otherwise change the terms of a statute. *Jones,* 464 N.W.2d at 242. Finally, "[w]e may consider the language used in the statute, the objects sought to be accomplished, the evils and mischiefs sought to be remedied and place a reasonable construction on the statute which will best effect its purpose rather than one which will defeat it." *Peffers,* 299 N.W.2d at 678.

■■■ We agree with the assessor and auditor that the county's mere participation in the risk pool did not constitute a waiver of governmental immunity as to the exceptions in section 670.4. Section 670.7 clearly says so: "if a municipality ... pays funds into a local government risk pool such action does not constitute a waiver of the defense of governmental immunity as to the exceptions listed in section 670.4."

■■■ The risk pool's procurement of the errors and omissions policy for the county is another matter. The county paid a $10,798 premium for the errors and omissions policy and the insurance company issued a separate errors and omissions policy to the county. The assessor and auditor think there was no waiver of immunity because the county purchased insurance through a risk pool rather than directly from a private insurer.

In passing section 613A.7—now section 670.7—we think the legislature intended to keep intact, to a limited extent, the common

law rule that existed before the enactment of statutes waiving governmental immunity. As mentioned, that rule provided that a municipality's mere purchase of insurance does not constitute a waiver of its immunity. As this court explained, there is good reason for the common law rule. At common law, governmental immunity did not cover all potential liability of a municipality. For example, "[n]either the city nor its employees were protected against liability for negligence incurred in performing proprietary functions; and the city at least had liability for its failure to keep its streets and parks reasonably safe and free from nuisance." *McGrath,* 248 Iowa at 1393, 85 N.W.2d at 621 (holding Iowa Code section 368A.1(12) authorizing cities and towns to purchase liability insurance was not intended to enlarge liability of a city or town purchasing such insurance).

Likewise, now, there are claims to which governmental immunity does not apply. *See* Iowa Code §§ 670.2, 670.12. Also, municipalities have a duty to defend and indemnify officers and employees against any tort claims arising out of their employment. *See* Iowa Code § 670.8. The language of section 670.7 makes clear that the legislature intended to authorize municipalities to purchase liability insurance insuring against such claims.

The language of section 670.7 makes it equally clear that—as to claims listed in section 670.4 to which governmental immunity does apply—municipalities have authority to purchase a liability insurance policy insuring against them. And governmental immunity as to those claims is waived *but only to the extent stated in such policy.* So, to this extent, the legislature has modified the common law rule that the mere purchase of insurance does not constitute a waiver of immunity.

That brings us to the decisive language in section 670.7: "[I]f a municipality adopts a self-insurance program or joins and pays funds into a local government risk pool such action does not constitute a waiver of the defense of governmental immunity as to the exceptions listed in section 670.4." A risk pool is another form of self-insurance but on a group basis. The members of the group

share the risks. The following excerpt from an affidavit supporting the assessor's and auditor's summary judgment motion buttresses this description of the risk pool here:

In summary, Cedar County, Iowa is and has been a member of the Heartland Insurance Risk Pool since January 1, 1988. That Risk Pool provides certain coverages for Cedar County which the Risk Pool members have decided to fund [themselves]. Certain other coverages are procured by the Risk Pool for its members. The Risk Pool procured for Cedar County and other County Risk Pool members the public officer's errors and omissions coverages. The Risk Pool members then confirmed the appropriateness of self-funding certain coverages and of procuring certain other coverages from private vendors. The Risk Pool members further confirmed the premiums for the different coverages which each member could select and would be required to pay. The Risk Pool, for all of its members, would search out private insurance companies (with regard to those coverages that the Risk Pool did not choose to self-fund) and obtained quotes based upon a group basis for different insurance coverages which its members could select. This was done in the procurement of the public officer's errors and omissions policy which Cedar County procured effective July 1, 1994 through June 30, 1995. The Risk Pool then would bill all of its members for the amounts necessary to pay premium charges either for self-funded coverages made available by the Risk Pool and for the amounts such privately selected vendors required as premiums for the policies the Risk Pool procured for its members.

The self-funded coverages in the risk pool are different from coverages provided through private policies the pool procures on behalf of its members. In the former, the pool pays the claims from the pool of money collected from pool members. In effect, pool members share and pay the claims. In the latter, the insurer issuing the policies pays the claims, and pool members do not share and pay the costs of such claims. Additional-

ly, each county pays a separate premium for the private policies.

We think the pool's procurement of private policies on behalf of pool members is substantially no different from insurance policy coverage any agent might procure on behalf of a municipality. The latter clearly waives governmental immunity. We see no reason why the same rule should not apply to the former.

As the city points out, a contrary interpretation would require the following additional italicized language to be read into section 670.7:

> [I]f a municipality adopts a self-insurance program or joins and pays funds into a local government risk pool, *which in turn purchases a liability insurance policy,* such action does not constitute a waiver of the defense of governmental immunity....

Additionally, the legislature made sure that a county's self-insurance program and the risk pool are not insurance that would waive governmental immunity as to the section 670.4 exceptions. *See* Iowa Code § 670.7 ("[I]f a municipality adopts a self-insurance program or joins and pays funds into a local government risk pool such action does not constitute a waiver of the defense of governmental immunity as to the exceptions listed in section 670.4...."). This indicates to us that the legislature knew how to exempt—for section 670.7 purposes—private policy coverage purchased by the pool on behalf of pool members. Because it did not provide such an exemption, we take that to mean it did not intend to do so.

Section 670.4 clearly provides that if a liability insurance policy is purchased covering the section 670.4 exceptions, governmental immunity is waived as to those exceptions to the extent stated in the policy. The undisputed facts show that the pool purchased an errors and omissions policy on behalf of the county and the county paid $10,798 in premiums for it.

This purchase waived governmental immunity as to claims in connection with the assessment or collection of taxes *provided* the policy covered such claims. That brings us to the second ground the assessor and audi-

tor rely on to uphold the district court's ruling.

■ *2. Policy did not expressly state it was providing coverage for claims arising from the assessment or collection of taxes.* As mentioned, section 670.7 provides that the procurement of insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4 "to the extent stated in the policy." The pertinent section 670.4 exception is "any claim in connection with the assessment or collection of taxes." The question then is whether the public official's errors and omissions policy here covers claims in connection with the assessment or collection of taxes.

Section I.A of the policy designates public officials as insureds. The policy pertinently defines "public officials" as

> those persons, individually or collectively, acting within the scope of their official capacity who were, now are, or shall be duly elected or appointed officials ... of the public entity.

The policy defines public entity as the county named insured in the policy—in this case, Cedar County. The assessor and auditor are appointed or elected officials of Cedar County. *See* Iowa Code §§ 39.17, 441.1, 441.6. Therefore, they are insureds under the policy.

The insuring clause in the policy pertaining to public officials provides:

> In consideration of the payment of the required premium, and in reliance upon the statements in the written application made a part hereof, the Underwriters agree as follows:
>
> I. INSURING AGREEMENT AND CLAIMS MADE CLAUSE
>
> A. With the insured public officials (hereinafter insureds) that if, during the policy period, any claim or claims are first made against the insureds, individually or collectively, for a wrongful act, the underwriters will pay on behalf of, in accordance with the terms of this policy, the insureds, or any of them, their executors, administrators or assigns, for all loss incurred by said insureds, or any of them by reason of any wrongful act.

The policy pertinently defines "loss" as such amounts ... which the insureds are legally obligated to pay, arising out of a wrongful act ...

"Wrongful act" is defined in the policy as any actual or alleged error or misstatement, omission, act of neglect or breach of duty including misfeasance, malfeasance or nonfeasance by the public officials in their official capacity, individually or collectively, or any manner claimed against them solely by reason of their having served or acted in an official capacity under the definition of public officials.

The exclusion section of the policy does not exclude any claims in connection with the assessment or collection of taxes. So we are left with the question whether failures to correctly assess or collect taxes are wrongful acts within the meaning of the policy. For reasons that follow, we think such failures are wrongful acts within the meaning of the policy.

Iowa Code section 331.510(4) requires the county auditor to make "[a]n annual report not later than January 1 to the governing body of each taxing district [here the city] in the county of the assessed valuations of taxable property in the taxing district [here the city] as reported to the department of management." In addition, Iowa Code section 331.512(11) requires the auditor to "[f]urnish the assessor a plat book which is platted with the lands and lots within the assessment district as provided in section 441.29."

As to the county assessor, Iowa Code section 441.17(2) requires this official to "[c]ause to be assessed, in accordance with section 441.21, all the property in the assessor's county or city, except property exempt from taxation, or the assessment of which is otherwise provided for by law." In addition, Iowa Code section 441.17(3) gives the assessor access to all public records of the county and requires the assessor to "make or cause to be made a careful examination of all such records and files in order to obtain all available information which may contribute to the accurate listing at its taxable value, and to the proper persons, of all property subject to assessment by the assessor."

In their statement of material facts as to which no genuine controversy exists, the assessor and auditor concede

that through omission, act of neglect, or breach of duty the county auditor and the county assessor failed to properly show on the tax lists of the City of West Branch the inclusion of the annexed properties described in Exhibit A to the Petition for the fiscal years of 1989/1990, 1990/1991, 1991/1992 and 1992/1993.

Given the breach of the statutory duties we set out above and given this concession, we conclude as a matter of law that the assessor and auditor committed wrongful acts within the meaning of the policy.

Nevertheless, the assessor and auditor contend that governmental immunity has not been waived because the policy "did not expressly state, as required by Iowa Code section 670.7, that it was providing coverage for the assessment or collection of taxes, otherwise immune under section 670.4(2)." In short, the assessor and auditor would require coverage language in the policy like the following: "The insureds are hereby provided coverage for failing to correctly assess or collect taxes." The assessor and auditor insist that the following italicized language in section 670.7 supports their contention: "The procurement of such insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4 *to the extent stated in the policy.*"

We refuse to give the language "to the extent stated in the policy" such a narrow construction. Had the legislature intended such a narrow meaning it could easily have used language to accomplish this aim. Because the legislature did not, we refuse to ascribe such an intention on its part.

In addition, we think—at least as to the assessor—that a contrary interpretation would render coverage for errors in connection with the assessment or collection of taxes meaningless as to that office. We can hardly conceive of any duty pertaining to the assessor that does not relate to the assessment and collection of taxes.

■ 3. *Policy's definition of "loss" as excluding coverage for claims in connection*

*with the assessment or collection of taxes.* The policy pertinently defines "loss" as "such amounts ... which the insureds are legally obligated to pay, arising out of a wrongful act." The assessor and auditor argue that they are not legally obligated to pay the city's claims because section 670.4(2) immunizes them against any liability for the assessment or collection of taxes.

The short answer to this argument is that the defense of governmental immunity was waived when the county purchased the policy. The city's claim in connection with the assessment and collection of taxes was therefore not a claim exempted from liability because of governmental immunity. *See* Iowa Code § 670.12 ("All officers and employees of municipalities are not personally liable for claims which are *exempted* under section 670.4....") (emphasis added). The undisputed facts show that the two officials committed a wrongful act within the meaning of the policy and the city suffered loss as a result. The two officers are therefore legally obligated to pay the city's claims.

V. *Disposition.*

We have considered all of the parties' arguments whether or not we have discussed them. After considering those arguments, we conclude the following. First, there is no section 670.4(2) governmental immunity regarding the city's claims against the assessor and auditor in connection with the assessment or collection of the taxes. Second, the policy covers the city's claims even though the policy does not expressly refer to the section 670.4(2) exempt claims. Last, the definition of "loss" in the policy does not preclude the city from recovering against the assessor and auditor on the city's claims in connection with the assessment or collection of the taxes.

Because the district court erroneously concluded the two officials enjoyed governmental immunity as to the city's claims, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**