Keith J. **FETTKETHER** and Ann Fettkether, Plaintiffs–Appellants/Cross–Appellees,

v.

**CITY OF READLYN,** Iowa, Steve Boevers, Tom Cozart, Roger Deterding, Roland Ott, Becky Tobey, Doug Bird, and Donald Koschmeder, Defendants–Appellees/Cross–Appellants.

No. 97–1914.

Court of Appeals of Iowa.

March 31, 1999.

808

William S. Smith of Smith & Burk, Waterloo, and Keith and Ann Fettkether, Readlyn, Iowa, for appellants.

Beth E. Hansen and Robert L. Ford of Swisher & Cohrt, P.L.C., Waterloo, for appellees.

Heard by STREIT, P.J., and MAHAN and ZIMMER, JJ.

STREIT, P.J.

A homeowner claims he was damaged by his town's handling of the building permit for his house. Keith and Ann Fettkether appeal the district court's grant of summary judgment to the City of Readlyn on their damage claims related to Readlyn's suspension of a building permit and from the court's discovery order. Readlyn cross-appeals the district court's grant of a permanent injunction to the Fettkethers enjoining Readlyn from stopping construction on their home. Readlyn and its officials and employees are immune from the Fettkethers' damage claims and the court did not abuse its discretion in its discovery ruling. The Fettkethers met their burden

to obtain injunctive relief. The trial court is affirmed on all issues.

## I. Background Facts and Proceedings.

This action arises out of a dispute regarding the parties' rights with respect to a thirty-foot utility easement running the length of the plaintiffs' property in the City of Readlyn, Iowa. In 1981, the Fettkethers granted Readlyn a thirty-foot utility easement running the length of one of several residential lots they owned in Readlyn. The Fettkethers also granted a ten-foot utility easement eight feet west and parallel to the thirty-foot easement, which ran along the lot's western boundary.

In March 1996, the Fettkethers decided to build their home on the lot with the 1981 easement. Originally, the construction plans were for a house with a two-car garage, but the Fettkethers later decided to make it a three-car garage. The Fettkethers applied for a building permit and submitted the plans with the two-car garage. The permit was issued by city inspector Doug Bird.

After construction had begun, Bird inspected the poured concrete footings of the dwelling and realized a three-car garage was being built. The garage footings for the third stall encroached on Readlyn's 1981 utility easement. He asked the Fettkethers to submit a revised site plan which did not encroach on Readlyn's easement. The Fettkethers did not submit a revised plan. After another inspection, Bird issued a correction notice giving approval for the concrete footings of the garage, so long as the eaves of the garage did not encroach on the easement. Based upon the Fettkethers' failure to supply a revised site plan, Bird issued a correction "stop work" notice, halting construction on the house. The Fettkethers submitted a revised site plan the next day.

Based upon the dimensions of the revised site plan, Bird concluded the lot would not accommodate the building. His on-site inspection confirmed the eaves encroached on the easement by twelve inches. Bird issued another "stop work" notice, informing the Fettkethers no further work was allowed without further word from the Readlyn city council.

The Fettkethers met with the city council and proposed swapping the encroached upon twelve-inch strip for a new twelve-inch easement on the other side of the thirty-foot strip. The council decided Readlyn would relinquish its old easement if the Fettkethers would grant an easement in favor of Readlyn over the eight-foot strip on the west side of the existing thirty-foot easement, pay Readlyn $2500, and execute a release in its favor.

On September 10, 1996, the Fettkethers filed the present action for damages and injunctive relief, requesting Readlyn be enjoined from stopping construction on their home. In January 1997, the district court granted a permanent injunction in favor of the Fettkethers. The district court granted Readlyn's motion for summary judgment on Fettkethers' damages claims. The court also denied the Fettkethers' motion to compel discovery of the audio tape recording and sealed minutes of the closed session of the Readlyn city council meeting. The Fettkethers appeal the court's grant of summary judgment on their damages claims and the court's denial of their discovery motion. Readlyn cross-appeals the court's grant of permanent injunctive relief to the Fettkethers.

## II. Exhaustion of Administrative Remedies.

Before reviewing the analysis used by the district court to decide this case, we note that a stop work order issued by the City of Readlyn through its building official, Doug Bird, is administrative action. The normal course of redress against such action is to seek review by the board of adjustment. *See* Iowa Code §§ 414.8, 414.12 (1997); *Riley v. Boxa*, 542 N.W.2d 519, 521 (Iowa 1996). The board of adjust-

ment has the power to "hear and decide appeals where it is alleged there is error in any ... decision ... made by an administrative official." Iowa Code § 414.12(1). The board may "reverse or affirm, wholly or partly, or may modify" the decision of the administrative official. *Id.* § 414.13.

■ Under the general rule, the Fettkethers were required to exhaust their administrative remedies before calling upon the court to act.[1] *See City of Iowa City v. Hagen Elecs., Inc.,* 545 N.W.2d 530, 533–34 (Iowa 1996). If administrative remedies were not exhausted, the court lacks jurisdiction to hear the case. *Aschan v. State,* 446 N.W.2d 791, 792 (Iowa 1989).

■ The Fettkethers' position appears to be they exhausted their administrative remedies by writing the City a letter requesting an appeal of the stop-work order; which the City denied. Because the City does not address the issue, we can only conclude they concede the Fettkethers have exhausted their administrative remedies.[2] Rather than seeking a writ of mandamus or filing a petition for judicial review of agency action, the Fettkethers filed a petition in equity and in law requesting an injunction (Count I) and for money damages (Counts II & III). The City did not contend at trial or on appeal the trial court erred in deciding Count I of the Fettkethers claim in equity rather than as a review of administrative action. For purposes of this appeal, we find the Fettkethers' petition in equity requesting an injunction tantamount to a petition for judicial review of agency action.

### III. Grant of Permanent Injunctive Relief.

■ By cross-appeal Readlyn argues the trial court erred in enjoining Readlyn from stopping the Fettkethers from construction on their house.

A request for injunctive relief invokes the court's equitable jurisdiction. *In re Lulof,* 569 N.W.2d 118, 122 (Iowa 1997). Therefore, our review is de novo. Iowa R.App. P. 4. "We give weight to the district court's findings of fact, especially when considering the credibility of witnesses, but are not bound by them." *Lulof,* 569 N.W.2d at 122.

The trial court granted the Fettkethers a permanent injunction to enjoin Readlyn from stopping construction on their house because the one-foot encroachment did not substantially or materially interfere with Readlyn's use of the thirty-foot easement. Readlyn argues the trial court's conclusion is not supported by the law of Iowa.

■ Although the principles the district court relied on have not been explicitly set out by the appellate courts of this state, we do believe the principles are supported by Iowa law and are sound for resolution of this issue. To obtain an injunction in Iowa, a plaintiff has the burden of proving a legal remedy is inadequate and an injunction is necessary to prevent irreparable injury to the plaintiff. *Planned Parenthood of Mid–Iowa v. Maki,* 478 N.W.2d 637, 639 (Iowa 1991). A court of equity should carefully weigh the relative hardship which would be incurred by the parties upon the award of injunctive relief. *Id.*

---

1. The Fettkethers may not have been required to exhaust their administrative remedies because exhaustion of administrative remedies is not a prerequisite to judicial determination of a substantive due process claim. *City of Iowa City v. Hagen Electronics, Inc.,* 545 N.W.2d 530, 535 (Iowa 1996). The Fettkethers argued the decision of the City and its officials were arbitrary and capricious so as to amount to an abuse of governmental power.

2. Even if they had not exhausted their administrative remedies, it is likely the Fettkethers could have proven the futility exception to the exhaustion of remedies requirement. "When the remedy is inadequate or its pursuit would be futile, exhaustion is not required." *Iowa Coal Min. Co., Inc. v. Monroe County,* 555 N.W.2d 418, 431 (Iowa 1996).

■ Most cases dealing with encroachment of easements are brought by a dominant landowner who seeks to enjoin the servient landowner from interfering with easement rights. *See, e.g., Minneapolis Athletic Club v. Cohler*, 287 Minn. 254, 177 N.W.2d 786 (1970)(defendant's construction of skywalk over alley did not interfere with plaintiff's right-of way easement to use alley and injunctive relief was denied). In such cases, courts of other states have generally granted an injunction only in cases where an interference with or obstruction of the easement substantially changes or unreasonably interferes with the owner's use of its easement. *See, e.g., id; Highland Club of West Roxbury v. John Hancock Mut. Life Ins. Co.*, 327 Mass. 711, 101 N.E.2d 372 (1951)(the owner of a servient estate may make such use of his land as is consistent with the easement of another, but the corollary of that rule is he may not use his land in a manner inconsistent with the easement). This reasoning would be applicable in Iowa as well. Our courts have recognized that an encroachment upon an easement by a neighboring landowner which was not substantial enough to interfere with the use and enjoyment of the premises did not affect rights in the subject property. *See Wilson Close, Ltd. v. Crane*, 499 N.W.2d 732 (Iowa App.1993)(eight-inch encroachment was not substantial enough to interfere with use and enjoyment of premises and did not render title unmerchantable).

One approach in determining whether an injunction should be granted in cases like this is to balance the inconvenience caused to each of the parties. *See, e.g., Monell v. Golfview Road Ass'n*, 359 So.2d 2, 3 (Florida App.1978); *see also Maki*, 478 N.W.2d at 639 (weighing hardships in deciding to grant or deny injunctive relief). In the case where the dominant estate has sued for injunctive relief because of an encroachment, courts often will not grant the injunction where a technical encroachment of another's easement is slight and cost of removing the encroachment would produce great harm. *See id.* The courts that have used this balancing of interests approach have considered of paramount importance whether the encroacher acted wilfully. *See id.*

■ This case is unusual because it is brought by the owner of the servient estate who is encroaching upon the easement of the dominant estate. Still, we believe the analysis to resolve the issue is the same. Therefore, we hold the Fettkethers were entitled to an injunction if they proved: (1) a legal remedy is inadequate and an injunction is necessary to prevent irreparable injury; (2) the encroachment upon Readlyn's easement is not substantial; (3) the balancing of the interests results in a greater inconvenience to the Fettkethers than Readlyn; and (4) the Fettkethers encroachment was not wilful.

Applying these principles, we find the Fettkethers proved their burden and affirm the trial court's grant of injunctive relief to the Fettkethers. The Fettkethers have proved a legal remedy is not adequate and they will be gravely harmed if they cannot continue construction on their house. The inconvenience is far greater and costlier to the Fettkethers than to Readlyn. The encroachment onto Readlyn's easement is minimal. The garage eves encroach twelve inches into the thirty-foot easement. The hard question is whether the Fettkethers encroachment was wilful. Readlyn argues it was, claiming the Fettkethers have "unclean hands" and should not be allowed to seek the equitable relief of an injunction. *See Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 184 (Iowa 1987)(equitable relief may be denied for unfair, dishonest, fraudulent, or deceitful conduct). After de novo review, we have found insufficient evidence the Fettkethers' conduct in encroaching on the easement was wilful to the extent it should deny them relief in equity. The trial court's grant of an injunction to the Fettkethers is affirmed.

## IV. Grant of Summary Judgment on the Fettkether's Damage Claims.

The Fettkethers assert the district court erred in granting Readlyn's summary judgment on their damages claims based on governmental immunity. The Fettkethers allege Readlyn waived its immunity by purchasing liability insurance. They further contend even if Readlyn has not waived its immunity, section 670.4(9) of the Iowa Code does not protect Readlyn from liability in this situation.

Our review of a grant or denial of summary judgment is at law. Iowa R.App. P. 4; *Sampson v. American Standard Ins. Co.*, 582 N.W.2d 146, 149 (Iowa 1998).

Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 201 (Iowa 1997). To determine whether there is a genuine issue of material fact, the court must examine the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 237(c). We review the record in the light most favorable to the party opposing summary judgment; in this sense, we consider a motion for summary judgment as we would a motion for directed verdict. *Smith v. CRST Int'l, Inc.*, 553 N.W.2d 890, 893 (Iowa 1996). Under this standard, summary judgment is inappropriate if reasonable minds would differ on how the issue should be resolved. *Dickerson v. Mertz*, 547 N.W.2d 208, 212 (Iowa 1996).

### A. Waiver of Governmental Immunity by Purchase of Liability Insurance

The district court concluded Readlyn was immune from liability for damages pursuant to Iowa Code section 670.4(9), and the officials and employees were immune pursuant to section 670.12.

Generally, Iowa Code section 670.2 subjects municipalities to liability for their torts and those of their officers and employees. *City of West Branch v. Miller*, 546 N.W.2d 598, 600 (Iowa 1996). For the purposes of section 670.2, a City is a municipality. *See* Iowa Code § 670.1(2). Iowa Code section 670.4 immunizes municipalities from tort liability arising in several specific instances. At issue here are Iowa Code sections 670.4(5) and (9) immunizing municipalities from tort liability for "[a]ny claim for punitive damages" or "[a]ny claim based upon an act or omission by an officer or employee of the municipality ... in the granting, suspension, or revocation of a license or permit ..." and 670.12 which immunizes all officers and employees of municipalities from tort liability as to all claims exempted in section 670.4 unless actual malice or willful, wanton and reckless misconduct is proven.

Municipalities waive section 670.4 governmental immunities when they purchase liability insurance, but only to the extent stated in such policy. Iowa Code § 670.4 (1997); *City of West Branch v. Miller*, 546 N.W.2d 598, 603 (Iowa 1996). To the extent certain torts are not covered under the liability insurance policy, they are not waived. *See id.*

The question becomes, then, whether the immunities provided for by sections 670.4(5),(9), and 670.12 were waived under the language of the liability policies purchased by Readlyn. Readlyn purchased two insurance polices: a general liability policy and an umbrella policy. The general liability policy expressly states:

> This policy does not apply to any claim against an 'Insured' for which the 'Insured' (1) is immune from liability due to the provisions of any statute. ... The immunities and statutory limits caps referred to in the foregoing paragraphs are those found in Iowa Code Chapter 670, or any succeeding statutory compilation.

The language in this general liability policy allows Readlyn to make the wise decision

of having insurance coverage for tort liability it is not immune from while retaining its existing statutory immunities. Allowing such a policy is in line with our supreme court's dicta in *Miller* recognizing there are claims to which a governmental immunity does not apply for which a city needs to purchase liability insurance. *See Miller*, 546 N.W.2d at 603.

We hold Readlyn's purchase of this general liability insurance policy did not waive its statutory immunity granted under 670.4(5) or (9). As for the umbrella policy, the language of that policy states the "policy does not apply unless coverage is provided in the 'primary' insurance" and that "[a]ny coverage provided by this endorsement will not be broader than the insurance provided by the 'primary' coverages." The primary insurance is the general liability policy. Under the umbrella policy, there is no coverage for claims for which Readlyn is statutorily immune and Readlyn has not waived its immunity by purchasing the umbrella policy.

### B. Applicability of Governmental Immunity Pursuant to Sections 670.4(5), (9) & 670.12 of the Iowa Code.

Because governmental immunity has not been waived by Readlyn, we must determine whether the immunities relied upon by Readlyn apply to the circumstances of this case.

■ There is no question pursuant to section 670.4(5) Readlyn is immune from being sued for punitive damages. The district court correctly granted Readlyn summary judgment on the punitive damage claim pursuant to that section.

■ The harder question is whether the immunity asserted by Readlyn and its officials pursuant to sections 670.4(9) and 670.12 apply to this case. The Fettkethers argue the sections are inapplicable and, even if applicable, Readlyn is not immune because the mayor of Readlyn and the city inspector acted with actual malice or wilfully, wantonly, and recklessly.

Section 670.4(9) provides immunity from:

Any claim based upon an act or omission by an officer or employee of the municipality or the municipality's governing body, in the granting, suspension, or revocation of a license or permit, where the damage was caused by the person to whom the license or permit was issued, unless the act of the officer or the license or permit was issued, unless the act of the officer or employee constitutes actual malice or a criminal offense.

The Fettkethers alleged they were damaged by Inspector Bird's suspension of their building permit and other city officials actions in making decisions regarding the permit. This is the type of conduct Readlyn is immune from under section 670.4(9). The Fettkether's alleged the actions of Readlyn employees and city officials have damaged them, however, none of this would be an issue had the Fettkethers timely revised their site plan to avoid encroachment upon Readlyn's easement. It was the Fettkethers decision to build a three-car garage which encroached upon Readlyn's easement and their delay in providing Readlyn correct information which was the impetus of this action. Accordingly, the immunity of section 670.4(9) applies.

■ The Fettkethers argue the immunity of section 670.4(9) does not apply because the conduct of Readlyn employees and officials displayed actual malice. "Actual malice is shown by such things as personal spite, hatred, or ill will." *Larson v. Great West Casualty Co.*, 482 N.W.2d 170, 174 (Iowa App.1992). Although the plaintiffs alleged malice in count II of their petition, they presented no evidence of actual malice to the trial court. Readlyn is immune from the plaintiffs' claims for damages under section 670.5(9) of the code. The trial court is affirmed on this issue.

The Fettkethers also allege numerous city employees and officials are personally liable to them for punitive damages pursuant to Iowa Code section 670.12. Under that section:

> ... officers and employees of municipalities are not personally liable for claims which are exempted under section 670.4, except claims for punitive damages, and actions permitted under section 85.20. An officer or employee of a municipality is not liable for punitive damages as a result of acts in the performance of a duty; unless actual malice or willful, wanton and reckless misconduct is proven.

■ The Fettkethers allege Inspector Bird acted willfully, wantonly, and recklessly in issuing the stop work order and Mayor Koschmeder acted without legal authority when he directed Inspector Bird to issue the stop work order. They further allege Readlyn council members acted with malice, willfully, wantonly, and recklessly at their council meeting. On the basis of the showing made by the Fettkethers, even when viewed in the light most favorable to them, the conduct of Readlyn officials and employees was not shown to be willful or wanton. In order to support such a claim, a plaintiff must show actual or legal malice. We reviewed the controlling principles in *Coster v. Crookham*, 468 N.W.2d 802, 810–11 (Iowa 1991). The trial court's ruling on this issue is affirmed.

### V. Denial of Motion to Compel.

■ The Fettkethers contend the district court erred in refusing to grant their request for production of a tape of the closed session held by the city council. They contend the tape would show whether Readlyn's actions were based on willful, wanton, or reckless misconduct.

■ We review a trial court's discovery rulings for abuse of discretion. *Double D Land and Cattle Co., Inc. v. Brown*, 541 N.W.2d 547, 549 (Iowa App. 1995). In order to show an abuse of discretion, one generally must show the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

In a case such as this, where litigation appeared imminent, Readlyn was authorized pursuant to Iowa Code section 21.5(1)(c) to hold a closed session to discuss strategy with counsel. Subsection 21.5(4) provides such matters "shall be sealed and shall not be public records open to public inspection," except in an enforcement action after examination by the court in camera. This is not an enforcement action, however, in the discovery context our supreme court, in *Dillon v. City of Davenport*, 366 N.W.2d 918, 921 (Iowa 1985), recognized the statute conflicted with the discovery rule providing parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Iowa R. Civ. P. 122(a). To resolve the conflict, the supreme court left it to the trial court to weigh the statute providing for sealed records against the discovery rule allowing an adverse party access to information. *Id.* Under the facts of this case, we find no abuse of the trial court's discretion in maintaining the seal of the records. The trial court's ruling is affirmed.

**AFFIRMED.**